IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. GARY L. HANEY**

**Direct Appeal from the Circuit Court for Jefferson County**
**No. 6260    Ben W. Hooper, II, Judge**

**No. E1999-00552-CCA-R3-CD - Decided**
**May 8, 2000**

Defendant Gary Haney was convicted of aggravated robbery by a jury in the Jefferson County Circuit Court.  After a sentencing hearing, the trial court sentenced Defendant as a Range II multiple offender to a term of twenty years in the Tennessee Department of Correction, to be served consecutively to a sentence previously imposed in another case.  Defendant challenges his conviction and his sentence, raising the following issues: (1) whether the trial court erred when it denied a motion for a continuance; (2) whether the trial court erred when it failed to suppress the victim's in-court identification of Defendant; (3) whether the trial court erred when it failed to suppress evidence that the victim identified Defendant during a photographic lineup; (4) whether the charge against Defendant should have been dismissed because there was a material variance between the indictment and the proof at trial; (5) whether the same proof can be used to establish an element of robbery and to enhance a conviction for robbery to one for aggravated robbery; (6) whether the evidence is sufficient to support Defendant's conviction; (7) whether the trial court erred when it failed to grant a motion for judgment of acquittal; (8) whether the trial court erred when it failed to declare a mistrial because of prosecutorial misconduct; (9) whether the trial court erred when it refused to let the jury rehear recorded trial testimony; (10) whether the trial court erred when it instructed the jury about criminal responsibility; (11) whether the trial court erred when it determined the length of Defendant's sentence; and (12) whether the trial court erred when it imposed consecutive sentencing.  After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WOODALL, J., delivered the opinion of the court.  WITT, J. filed a concurring in results only opinion, in which RILEY, J. joined.

James D. Hutchins, Dandridge, Tennessee, Counsel for Appellant, Gary L. Haney at trial and on appeal, and W. Keith Repass, Dandridge, Tennessee, Counsel for Appellant, Gary L. Haney on appeal only.

Paul G. Summers, Attorney General and Reporter, Elizabeth B. Marney, Assistant Attorney General, Al C. Schmutzer, Jr., District Attorney General, and Charles Murphy, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. FACTS

Kathy Shoun testified that on July 20, 1997, she was working at the Fastop #4 in White Pine, Tennessee. At approximately 2:10 p.m., Defendant entered the store and asked Shoun if she was alone. When Shoun responded that she was, Defendant pulled a gun out of his shorts, pointed it at Shoun, cocked it, and ordered Shoun to give him money. Shoun then opened the cash register and Defendant took approximately $364.00. While this was occurring, Walter Lee Allen entered the store, but Defendant never looked at or spoke to Allen.

Shoun testified that at this point, Defendant demanded that she give him her billfold. Defendant then took Shoun's billfold that contained some food stamps worth $102.00 as well as some personal items. Shortly thereafter, Defendant ordered Shoun to walk to the back of the store to an area with no windows. This caused Shoun to become frightened that Defendant was going to kill her.

Shoun testified that a few days after the robbery, she identified both Defendant and Allen in a photographic lineup.

Chief Dean Smith of the White Pine Police Department testified that on July 21, 1997, Shoun viewed some photographic lineups. When Shoun viewed the first lineup that contained computer enhanced photographs that were the size of postage stamps, Shoun could not identify any of the photographs. When Shoun subsequently viewed two lineups that contained Polaroid photographs, she identified Defendant and Allen without any trouble.

Chief Smith testified that the robbery was reported to the police department at 2:48 p.m.

Patricia Haney, Defendant's mother, testified that Defendant left her home sometime between 2:00 and 2:30 p.m. on Sunday July 20, 1997. Ms. Haney subsequently saw Defendant jet-skiing at a nearby lake at approximately 4:00 p.m.

Ms. Haney testified that Defendant had also been at the lake on the two Sundays before July 20, 1997.

Eric Carter, Defendant's cousin, testified that he was with Defendant at a lake on a Sunday in July of 1997. Although he was not certain, Carter believed that it was July 20, 1997.

## II. DENIAL OF A CONTINUANCE

Defendant contends that the trial court erred when it denied his motion for a continuance so that he could serve an alibi witness with a subpoena to appear at trial. We disagree.

The record indicates that on the day of trial, Defendant made an oral motion for a continuance so that he could have an alibi witness served with a subpoena. The trial court denied the motion because it was not in writing and it was not accompanied by an affidavit. Later that same day, Defendant filed a written motion for a continuance accompanied by an affidavit which stated that five unsuccessful attempts had been made to serve a subpoena on Nancy Leatherwood, who was needed to provide alibi testimony for Defendant. This written motion was denied; however, the trial court issued a capias in an attempt to obtain Leatherwood's attendance at trial.

During the hearing on a motion for a new trial, Defendant filed a written statement from Leatherwood that was given three days after the trial in this case. In the statement, Leatherwood stated that on a Sunday in July of 1997 that she could not identify by date, she was with Defendant and some other individuals at a lake from approximately 2:00 p.m. to 8:00 p.m. Leatherwood also stated that at approximately 5:00 p.m., Defendant left the lake and was gone for a short period. In addition, Leatherwood stated that she did not appear for court because she was afraid of Defendant's brother and she was staying in a motel.

The Tennessee Supreme Court has stated that "[a] motion for a continuance is addressed to the sound discretion of the trial judge and his ruling on the motion will not be disturbed in the absence of an abuse of discretion to the prejudice of the defendant." State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." Id. In addition, this Court has stated:

> When requesting a continuance to accommodate a missing witness, the grounds must be set out in an affidavit which alleges (a) the substance of the facts the defendant expects to prove through the unavailable witness; (b) sufficient facts to establish the relevance and materiality of the testimony; (c) the admissibility of the testimony, if the witness was available; (d) the non-cumulative nature of the testimony; (e) the witness' availability at a later date; and (f) due diligence in attempting to obtain the presence of the witness. Failure to file the motion in proper form may be a ground for denial.

State v. Zirkle, 910 S.W.2d 874, 884 (Tenn. Crim. App. 1995) (citations omitted).

Initially, we note that the affidavit filed in support of the written motion for a continuance did not contain all of the required information and the trial court would have been justified in denying the motion on that ground alone. See id. Nevertheless, we will address the merits of the issue.

We conclude that the trial court did not abuse its discretion when it denied the motion for a continuance. First, any testimony from Leatherwood would have done little to further an alibi defense. It appears from Leatherwood's brief statement that any testimony she could have provided would have added nothing to the alibi testimony provided by Carter and Ms. Haney and thus, Leatherwood's testimony would have been cumulative evidence. Further, Leatherwood was unable to even state that she had seen Defendant on the date of the offense and rather, her statement begins with the assertion that "Back in July of 1997, [I] don't remember the date but it was on a Sunday.

. . ." Second, there is no indication that if a continuance had been granted, Leatherwood would have appeared for trial. Defense counsel admitted during the hearing on the motion for a new trial that Leatherwood had previously been served with a subpoena and she had failed to appear for the original trial date. In fact, defense counsel stated that the reason the trial had previously been continued was because Leatherwood had failed to appear. Further, defense counsel stated that Leatherwood had told her mother that she would not appear for trial, and defense counsel believed that the reason Leatherwood could not be located to be served with a subpoena for the second trial date was because she was trying to avoid the subpoena. Indeed, Leatherwood's statement indicates that she had been hiding in a motel room so that she would not have to appear in court and encounter Defendant's brother.

In short, Defendant has failed to establish that the trial court's failure to grant a continuance denied him a fair trial or that it can be reasonably concluded that a different result would have followed had the continuance been granted. Thus, we conclude that the trial court did not abuse its discretion when it denied the motion for a continuance. Defendant is not entitled to relief on this issue.

### III. IN-COURT IDENTIFICATION BY THE VICTIM

Defendant contends that the trial court erred when it refused to suppress the in-court identification of him made by Shoun. Specifically, Defendant argues that the identification should have been suppressed because it was the product of impermissibly suggestive identification procedures. We disagree.

"To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." State v. Cribbs, 967 S.W.2d 773, 794 (Tenn. 1998). However, "a reliable identification procedure, even though suggestive, will not negate an identification of the defendant." Id. (citing Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). When determining whether an identification procedure was too suggestive to be reliable, the court analyzes the following factors:
> (1) the opportunity of the witness to view the criminal at the time of the offense;
> (2) the witness' degree of attention;
> (3) the accuracy of the witness' prior description of the individual;
> (4) the level of certainty demonstrated by the witness at the confrontation; and
> (5) the time between the crime and the confrontation.

Cribbs, 967 S.W.2d at 794 (citing Neil, 409 U.S. at 199, 93 S.Ct. at 382).

Defendant claims that the identification procedures in this case were impermissibly suggestive because the trial court required Defendant to stand during jury selection while Shoun was present and the trial court required Defendant to stand while Shoun identified him in court.

As for Defendant's claim that it was improper to have him stand during jury selection, we note that the record in this case does not contain a transcript of the voir dire proceedings. Thus, we

-4-

have no way of determining whether the voir dire procedure was improper in any manner. It is the duty of the party seeking appellate review to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues raised by the party. State v. Ballard, 855 S.W.2d 557, 560–61 (Tenn. 1993). When the record is incomplete, and does not contain a transcript of the proceedings relevant to an issue presented for review, this Court is precluded from considering the issue. State v. Matthews, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990).

As for Defendant's second claim, we note that the record does not support his assertion that Shoun was only able to make an in-court identification of him after the trial court ordered him to stand. The record indicates that when the prosecutor asked Shoun whether she could see the robbers in the courtroom, Shoun replied, "Right over there." The prosecutor then asked the trial court to have Defendant and Allen stand so that Shoun could identify the man who held the gun and the man who merely stood by the door. Although it is not entirely clear, Defendant and Allen apparently did stand up at that point. Shoun then testified that Defendant was the man who held the gun and Allen was the man who stood by the door.

We conclude that even assuming arguendo that having Defendant stand during voir dire and during trial was suggestive, it was not too suggestive to be unreliable under the standard of Cribbs. First, Shoun identified Defendant in a photographic lineup only one day after the robbery—long before she observed Defendant stand on the day of trial. Indeed, Chief Smith testified that Shoun was able to identify Defendant's picture in a photographic lineup "with no trouble, no doubt." In addition, the record indicates that Shoun was able to look closely at Defendant's face when he approached her and asked whether she was alone. Further, Shoun was absolutely emphatic in her identification of Defendant. In fact, when Shoun made her in-court identification of Defendant and Allen, she stated,

> And these two men here—I will never forget you two as long as I live, never forget you.
> Never, never. There is no way that I could possibly ever forget you two; there's no way in
> the sight of God I could ever forget your two faces as long as I live.

Under these circumstances, we conclude that the identification procedures were not so impermissibly suggestive that Shoun's identification of Defendant is unreliable. Defendant is not entitled to relief on this issue.


## IV. PHOTOGRAPHIC LINEUP

Defendant contends that the trial court erred when it admitted evidence that Shoun had identified him in a photographic lineup. Specifically, Defendant argues that because there was no testimony about how his photograph came to be included in the array that was viewed by Shoun, the jury had to assume that his photograph was included in the array because he had a prior history of criminal conduct. We disagree.

Defendant has cited no authority for his proposition that the jury must be informed about the manner in which an accused's photograph was selected and placed in a photographic lineup, and we reject it. Further, Defendant's position on appeal contrasts with his position at trial. The record indicates that before trial, defense counsel strenuously argued that the jury should not be informed about how the photographs were obtained.

Moreover, Defendant's theory that the jury had to assume that his photograph was included in the lineup because he had a prior criminal record is pure speculation that is not supported by one scintilla of evidence from the record. This Court will not reverse Defendant's conviction based on nothing more than pure speculation. Defendant is not entitled to relief on this issue.

## V. VARIANCE

Defendant contends that the trial court should have dismissed the charge against him at the close of the proof because there was a material variance between the indictment and the evidence introduced at trial. We disagree.

Under Tennessee law, robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). In addition robbery becomes aggravated when, as in this case, the robbery is accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (1997). The indictment in this case alleges that Defendant:

> did unlawfully, feloniously, intentionally and knowingly obtain property, to wit: U.S. monies, food stamps, and personal property from the person of Kathy Shoun, by violence and accomplished with a deadly weapon, to wit: a gun, with the intent to deprive said Kathy Shoun of the property and without her effective consent in violation of Tenn. Code Ann. § 39-13-402.

Defendant contends that because the indictment alleged that he took property "by violence" and the proof established that he took property by placing Shoun in fear, there is a material variance between the indictment and the proof. Specifically, Defendant argues that the State failed to prove that he took the property from Shoun "by violence" because there was no proof that he ever made physical contact with Shoun.

We acknowledge that a panel of this Court recently addressed this precise issue in an appeal brought by the co-defendant in this case and held that there was no proof that Defendant used violence in the robbery of Shoun. State v. Walter Lee Allen, No. 03C01-9807-CC-00257, 2000 WL 276840, at *4 (Tenn. Crim. App., Knoxville, March 15, 2000). We respectfully disagree with the decision of the panel in Walter Lee Allen that Defendant's conduct did not amount to "violence" under the relevant statute.

The Tennessee Supreme Court recently analyzed the meaning of "violence" as used in the robbery statutes in State v. Tony Fitz, --- S.W.3d---, No. W1997-00186-SC-R11-CD, slip op. at 3–5 (Tenn. April 10, 2000). The supreme court began its analysis by noting that "violence" is not defined in the statutes. The supreme court then turned to other sources and noted that

According to Black's Law Dictionary, "violence" is defined as: "[u]njust or unwarranted exercise of force . . . [p]hysical force unlawfully exercised; abuse of force . . . [t]he exertion of any physical force so as to injure, damage or abuse." Id. at 1570. Similarly, Webster's defines violence as "exertion of any physical force so as to injure or abuse." Webster's Third New International Dictionary of the English Language – Unabridged 2554 (1993).

Fitz, slip op. at 3. The supreme court then held that as used in the robbery statutes, "violence" is defined as "physical force unlawfully exercised so as to damage, injure or abuse." Id., slip op. at 5. The supreme court also held that the element of violence had been established in that case because the proof showed that "[w]hen the clerk opened the cash register, Fitz shoved the clerk with both hands in an 'aggressive manner,' knocking the clerk backward into a cigarette display. Fitz then grabbed cash from the register and fled. Although the clerk was not hurt, he was stunned and afraid." Id.

In this case, Shoun testified that after Defendant entered the store, he pulled a gun out of his shorts, pointed it at her, cocked it, ordered her to give him money, took approximately $364.00 from the cash register, demanded that she give him her billfold, and took the billfold that contained some food stamps worth $102.00 as well as some personal items. Shoun testified that at this point, Defendant "told me to walk to the back side where there wasn't no windows, and at that time that's when I just knew he was going to kill me at that time." Although Shoun did not expressly testify that Defendant continued to point the gun at her while she walked to the back of the store, it can clearly be inferred that he did. In addition, it is clear that Defendant ordered Shoun to the back of the store in order to facilitate his escape from the scene of the offense.

We conclude that under the unique facts of this case noted above, Defendant's conduct constituted "violence" as defined in Fitz in that it was "physical force unlawfully exercised so as to damage, injure or abuse." Defendant's conduct of ordering Shoun to a windowless part of the store at gunpoint was no less "violent" than the conduct in Fitz where the offender merely pushed a clerk backward.

We do not agree with Defendant that his conduct did not amount to "violence" simply because there was no proof that he ever physically touched Shoun. Significantly, the supreme court never stated in Fitz that proof of "violence" could only be established by proof of physical contact between the offender and the victim. Moreover, it makes no logical sense to conclude that the element of "violence" would have been established if Defendant had directed Shoun to the back of the store by pressing his hand or the gun against her body, and also conclude that the element of "violence" was not established simply because Defendant did not touch Shoun's body when he caused her to fear for her life by ordering her to the windowless part of the store at gunpoint. Defendant's conduct would have been no more damaging, injurious, or abusive if he had come into slight contact with Shoun's body during his criminal misconduct. Surely, if pushing a clerk away from a cash register is "violence," then pointing a gun at a clerk and ordering her to move from one area of a store to another must also be "violence."

Although we have concluded that Defendant's conduct did amount to "violence," we note with some concern the State's failure to include an allegation in the indictment that Defendant

committed the aggravated robbery by placing Shoun "in fear." As previously stated, robbery can be established either by showing the use of violence or by showing that the victim was placed in fear. See Tenn. Code Ann. § 39-13-402(a)(1) (1997). There should have been no question that the State would be able to establish the element of "fear" in this case. We are at a loss to understand the State's decision to risk an acquittal or a reversal of Defendant's conviction by failing to allege the element of fear in the indictment.

In short, we conclude that the State did establish the element of "violence" under the unique facts of this case. Therefore, there was no variance between the indictment and the proof introduced during trial. Defendant is not entitled to relief on this issue.

## VI.  USE OF THE SAME EVIDENCE TO ESTABLISH
## BOTH ROBBERY AND AGGRAVATED ROBBERY

Defendant contends that his use of a gun cannot be used both to establish an element of robbery (violence or fear) and then also be used to enhance his conviction from robbery to aggravated robbery. We disagree.

Defendant has cited no relevant authority for his unique proposition, and we reject it. Indeed, Defendant's argument is contrary to the express terms of the relevant statutes. Tennessee Code Annotated section 39-13-401 provides that robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). Section 39-13-402 provides that aggravated robbery "is robbery as defined in § 39-13-401: [a]ccomplished with a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1) (1997). Clearly, under the express terms of these statutes, aggravated robbery is nothing more than robbery that is committed with a deadly weapon—no proof of additional violence or fear over and above that necessary to establish the robbery itself is required to establish aggravated robbery. Defendant is not entitled to relief on this issue.

## VII.  SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support his conviction for aggravated robbery. We disagree.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). Since a verdict of guilt removes the

presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As previously stated, robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear," Tenn. Code Ann. § 39-13-401(a) (1997), and aggravated robbery is robbery accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (1997).

We conclude that when the evidence is viewed in the light most favorable to the State, as it must be, a rational jury could find beyond a reasonable doubt that Defendant committed the offense of aggravated robbery. Shoun testified that on July 20, 1997, Defendant entered the store, pointed a gun at her, cocked the gun, demanded money from the register, took $364.00, demanded that she give him her billfold, took food stamps worth $102.00 and other personal items, forced her to the back of the store at gunpoint, and then left the store. This evidence unquestionably entitled a rational jury to find beyond a reasonable doubt that Defendant used a deadly weapon to intentionally take property from Shoun by violence and thus, Defendant was guilty of aggravated robbery.

Essentially, Defendant argues that the above evidence was insufficient because Shoun's testimony that he was one of the robbers was simply not believable and because he presented strong alibi evidence that proved that he could not have committed the aggravated robbery. However, "[t]he credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." Cribbs, 967 S.W.2d at 793. The jury obviously believed Shoun's testimony and rejected the alibi testimony from Carter and Ms. Haney.

In this case, Defendant essentially asks us to reconsider the evidence and substitute a verdict of not guilty in place of the verdict found by the jury. That is not our function. Instead, we conclude that a rational jury could have found beyond a reasonable doubt that Defendant committed the offense of aggravated robbery. See Tenn. R. App. P. 13(e). Defendant is not entitled to relief on this issue.

## VIII.  MOTION FOR JUDGMENT OF ACQUITTAL

Defendant contends that the trial court erred when it refused to grant his motion for judgment of acquittal. We disagree.

Rule 29(a) of the Tennessee Rules of Criminal Procedure provides, in relevant part, "[t]he court on motion of a defendant . . . shall order the entry of judgment of acquittal of one or more offenses charged in the indictment . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." Tenn. R. Crim. P. 29(a). "When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence." State v. Blanton, 926 S.W.2d 953, 957 (Tenn. Crim. App.1996) (citation omitted). "To

determine whether the evidence is insufficient to sustain the conviction, the trial court must consider the evidence introduced by both parties, disregard any evidence introduced by the accused that conflicts with the evidence adduced by the State, and afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence." Id. at 957–58 (citation and internal quotations omitted).

Defendant argues that the trial court should have granted his motion for judgment of acquittal because the indictment charged him with taking property "by violence" and the State failed to prove that he used violence against Shoun. For the same reasons we rejected this argument in Part V, supra, we reject here. As discussed in Part VII, supra, the evidence in this case was clearly sufficient to support Defendant's conviction. Thus, we conclude that the trial court properly denied the motion for judgment of acquittal. Defendant is not entitled to relief on this issue.

## IX. PROSECUTORIAL MISCONDUCT

Defendant contends that the trial court erred when it refused to grant a mistrial because the prosecutor committed misconduct during his closing argument. We disagree.

The record indicates that the prosecutor made the following statement during his closing argument:
> And [the defense has] impressed upon you how important this trial is. It certainly is important. It's important to both these defendants, but it's important to the victim in this case as well. It is important to every citizen in Jefferson County because there's no difference in any of you, or me, or anybody else in the county, than this lady sitting right here, who is the victim in that robbery. No differences, except fate cast her in that place at that time when Gary Haney pulled the gun and stuck it in her face.

In response, defense counsel stated, "we would object to the Attorney General placing the Jurors in the position of the victim. That's improper." The court then instructed the jury, "[y]ou all will not look at it in that fashion."

"Because argument of counsel is a valuable privilege that should not be unduly restricted, our courts give wide latitude to counsel in arguing their position in a case to the jury." State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). However, "[c]losing argument must be temperate, must be predicated on evidence introduced during the trial of a case, and must be pertinent to the issues being tried." State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1996). "When a prosecutor's argument goes beyond the latitude afforded, the test for determining if reversal is required is whether the impropriety 'affected the verdict to the prejudice of the defendant.'" State v. Richardson, 995 S.W.2d 119, 126 (Tenn. Crim. App. 1998) (quoting Harrington v. State, 215 Tenn. 338, 340, 385 S.W.2d 758, 759 (1965)). The Tennessee Supreme Court has identified five factors that should be analyzed to determine whether the defendant was prejudiced by improper argument:
> 1) the conduct complained of, viewed in light of the facts and circumstances of the case; 2) the curative measures undertaken by the court and the prosecution; 3) the intent of the prosecutor in making the improper statement; 4) the cumulative effect of the improper

conduct and any other errors in the record; and 5) the relative strength or weakness of the case.

State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998).

We conclude that even if the prosecutor's comment could be considered improper, Defendant was not prejudiced by it. The trial court immediately gave a curative instruction in which it instructed the jurors not to put themselves in the place of the victim. In addition, the cumulative effect of any error in the comment and any other errors in the record does not require a new trial. Further, the case against Defendant was strong. Thus, we conclude that the trial court did not abuse its discretion when it failed to grant Defendant's request for a mistrial. Defendant is not entitled to relief on this issue.

## X. RECORDED TESTIMONY

Defendant contends that the trial court committed reversible error when it refused to allow the jury to rehear the recorded testimony of Ms. Haney. We agree that the trial court erred, but we conclude that the error was harmless.

The record indicates that during deliberations, the jury requested to hear the testimony of Ms. Haney again. In response, the trial court stated that it "kn[e]w of no provision in the law" that would permit the jury to rehear the testimony. The court then instructed the jury to return to its deliberations.

In State v. Jenkins, 845 S.W.2d 787 (Tenn. Crim. App. 1992), this Court adopted the following standard to guide a trial court in determining whether to permit a jury to rehear testimony or review evidence presented during trial:

(a) If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to the jury and shall permit the jury to reexamine the requested materials admitted into evidence.

(b) The court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

Id. at 793. This Court also stated that "[u]nder this standard the trial court would have the discretion to take such action as necessary, including denying the jury's request, to insure that the jury's determination of a factual issue would not be distorted by undue emphasis on particular evidence." Id.

The trial court erred when it refused to let the jury rehear Ms. Haney's testimony. Under the above standard, the trial court shall permit the jury to rehear requested testimony if the request is reasonable. There was nothing unreasonable about the jury's request. Nevertheless, we conclude that this error was harmless because Defendant has not shown that he was prejudiced by it.

Defendant argues that he was prejudiced by the trial court's error because Ms. Haney's testimony was critical to his alibi defense in that Ms. Haney testified that Defendant was at the lake for the entire period from 2:00 or 2:30 p.m. until 5:00 p.m. on July 20, 1997. This assertion is inaccurate. The record actually indicates that Ms. Haney testified that she was with Defendant at her home until he left at 2:00 or 2:30 p.m. Ms. Haney also testified that she did not see Defendant again until she went to the lake at approximately 4:00 p.m. Thus, Ms. Haney was not able to account for Defendant's whereabouts for the entire period from 2:00 to 5:00 p.m. Instead, Ms. Haney was unable to account for Defendant's whereabouts during the approximate time that the offense was committed. Had the jury actually listened to Ms. Haney's testimony again, the fact that she could not provide a complete alibi for Defendant would have been even more apparent. Under these circumstances, we conclude that the error was harmless because it does not affirmatively appear to have affected the result of the trial on the merits. See Tenn. R. Crim. P. 52(a). Defendant is not entitled to relief on this issue.

## XI. CRIMINAL RESPONSIBILITY INSTRUCTION

Defendant contends that the trial court committed reversible error when it instructed the jury about all aspects of criminal responsibility under Tennessee Code Annotated section 39-11-402 when only one subsection of that statute was implicated by the facts presented at trial. We disagree.

Although Defendant makes the conclusory statement that his "conviction must be reversed because of the excessive and irrelevant jury charge," he has failed to make any effort to show how he was prejudiced by the trial court's decision to give a complete charge. Moreover, Defendant has failed to cite any authority for his proposition that a thorough and complete jury charge may be grounds for reversal. Further, the instruction on criminal responsibility had nothing whatsoever to do with Defendant. The instruction only went to the propriety of convicting Allen for an offense based on his conduct of silently standing by the door while Defendant robbed Shoun. Thus, the only person who could have possibly been prejudiced by the instruction was Allen. In short, Defendant has failed to establish either that the trial court erred or that he was prejudiced by the instruction. Defendant is not entitled to relief on this issue.

## XII. LENGTH OF SENTENCE

Defendant contends that the trial court erred when it determined the length of his sentence. We disagree.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing

principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997 & Supp. 1999); Ashby, 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." Id. Because the record in this case indicates that the trial court properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness.

Defendant was convicted of aggravated robbery, which is a Class B felony. See Tenn. Code Ann. § 39-13-402(b) (1997). The sentence for a Range II offender convicted of a Class B felony is between twelve and twenty years. Tenn. Code Ann. § 40-35-112(b)(2) (1997). The presumptive sentence for a Class B felony is the minimum sentence in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (1997). If there are enhancement, but no mitigating factors, the court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d) (1997).

The record indicates that in determining the length of Defendant's sentence, the trial court found that the following enhancement factors applied: (1) Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (8) Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; and (13)(C) the felony in this case was committed while on probation for a prior felony conviction. See Tenn. Code Ann. § 40-35-114(1), (8), (13)(C) (1997). The trial court also found that none of the enumerated mitigating factors of Tennessee Code Annotated section 40-35-113 were applicable.

Defendant does not challenge the application of enhancement factor (1), and we conclude that it was properly applied. The presentence report indicates that Defendant's prior criminal record consists of one robbery conviction, one aggravated burglary conviction, one automobile burglary conviction, one evading arrest conviction, six theft convictions, and nine public intoxication convictions.

Defendant does challenge the application of enhancement factor (8). Specifically, Defendant contends that this factor was not applicable because it was based on the fact that he committed the instant offense while on probation. Defendant is correct that factor (8) cannot be applied simply because a defendant committed the offense for which he or she is being sentenced while on probation. See State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995). However, Defendant's argument is inaccurate. The record indicates that the trial court did not apply factor (8) because Defendant committed the instant offense while on probation, but rather, the trial court applied this factor because Defendant had violated his probation on previous occasions. Indeed, the presentence report indicates that Defendant had previous probation violations on January 26, 1996; February 27, 1995; and December 1, 1992. Thus, the trial court properly applied factor (8).

Defendant also challenges the application of enhancement factor (13)(C). We conclude that the factor was properly applied. It is undisputed that Defendant committed the aggravated robbery

in this case while he was on probation for a previous felony theft conviction. Thus, enhancement factor (13)(C) was applicable.

Defendant also contends that factor (13)(C) was not applicable because the trial court applied this factor for the same reason that it applied factor (8)—the fact that Defendant committed the instant offense while on probation. As previously stated, this argument is inaccurate. The trial court based the application of factor (8) on Defendant's previous probation violations and based the application of factor (13)(C) on Defendant's commission of the instant offense while on probation for a prior felony conviction. The application of these two factors was clearly based on different and discrete misconduct.

Defendant does not contend that the trial court erred when it failed to apply any mitigating factors. We conclude in our de novo review that no mitigating factors are applicable in this case.

Finally, Defendant contends that the trial court erroneously gave too much weight to the enhancement factors. However, it is well-established that the weight to be given to each enhancement and mitigating factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. State v. Zonge, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997); State v. Baxter, 938 S.W.2d 697, 705 (Tenn. Crim. App. 1996). The trial court did not abuse its discretion when it determined the weight of the factors in this case.

In our de novo review, we conclude that three enhancement factors and no mitigating factors are applicable to Defendant's sentence. Under these circumstances, we conclude that a sentence of twenty years is entirely appropriate in this case. Defendant is not entitled to relief on this issue.

## XIII.  CONSECUTIVE SENTENCING

Defendant contends that the trial court erred when it ordered the sentence in this case to be served consecutively to a sentence that had previously been imposed in another case. We disagree.

Consecutive sentencing is governed by Tennessee Code Annotated section 40-35-115. The trial court has the discretion to order consecutive sentencing if it finds that one or more of the required statutory criteria exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). In addition, consecutive sentencing may be imposed even though the sentences are for convictions arising out of separate proceedings. State v. Moore, 942 S.W.2d 570, 572 (Tenn. Crim. App. 1996).

The record indicates that the trial court based its order of consecutive sentencing on the following factors from section 40-35-115: (1) Defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of his livelihood; (2) Defendant is an offender whose criminal record is extensive; (4) Defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the

risk to human life is high; and (6) Defendant's sentence in this case is for an offense that he committed while on probation. See Tenn. Code Ann. § 40-35-115(b)(1), (2), (4), (6) (1997).

Defendant argues that the trial court erred when it found that he was a professional criminal and that he was a dangerous offender. However, we need not address the propriety of these determinations because the record clearly supports the trial court's imposition of consecutive sentencing based on the other determinations. First, Defendant is clearly an offender whose criminal record is extensive. Indeed, Defendant's prior criminal record consists of one robbery conviction, one aggravated burglary conviction, one automobile burglary conviction, one evading arrest conviction, six theft convictions, and nine public intoxication convictions. This Court has previously stated that "[e]xtensive criminal history alone will support consecutive sentencing." State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). Second, there is no dispute that Defendant committed the aggravated robbery in this case while he was on probation.

Defendant also contends that the trial court erred when it imposed consecutive sentencing because the court failed to make the required determinations that consecutive sentencing is required to protect the public from future criminal conduct by Defendant and that consecutive sentencing is reasonably related to the severity of the offense. However, the Tennessee Supreme Court has held that a trial court is only required to make these determinations when consecutive sentencing is based on a finding that a defendant is a dangerous offender. State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). Because consecutive sentencing in this case is appropriate based on a finding that Defendant is an offender whose criminal record is extensive and that Defendant committed the aggravated robbery in this case while he was on probation, there is no requirement that consecutive sentencing is required to protect the public from future criminal conduct by Defendant and that consecutive sentencing is reasonably related to the severity of the offense. Defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.