STATE of Tennessee, Petitioner,

v.

John SUTTON, Jr., Respondent.

Supreme Court of Tennessee.

March 13, 1978.

Brooks McLemore, Jr., Atty. Gen., Patricia J. Cottrell, Asst. Atty. Gen., Nashville, for petitioner.

James C. Lee, Chattanooga, for respondent.

## OPINION

FONES, Justice.

Defendant John Sutton was indicted for driving while intoxicated, and disorderly

conduct. His wife, Gloria, was indicted for disorderly conduct arising from the same incident, and the two were tried jointly. The jury returned a verdict of guilty on all charges. The trial judge, on motion for new trial, directed a verdict of acquittal on the disorderly conduct charges, but let stand respondent's conviction for driving under the influence, with the jury-imposed penalty of ten (10) days incarceration and a five hundred ($500) dollar fine. The Court of Criminal Appeals reversed the conviction on the basis of improper argument, and remanded the case for a new trial. We granted the State's petition for writ of certiorari.

The proof adduced on behalf of the State reflects the following facts:

Chattanooga policeman Steve Miller and a "ride along" student trainee, Reba Begley, were on patrol about 9:40 p. m. on Friday, January 16, 1976, when Miller saw a car coming toward him "at an extremely high rate of speed." When the car passed Miller, he made a U-turn with his cruiser and gave chase, hitting speeds up to seventy-five or eighty miles per hour while simultaneously calling for help on his radio. Miller was never able to close on the car, a Cadillac, but the car was intercepted by another police cruiser driven by Officer Turner. Both Miller and Turner gave chase with sirens and flashing lights until the Cadillac finally stopped in the parking lot of Gloria Sutton Realty Company.

The occupants of the car were eventually determined to be the defendants and Danny Simmons, an employee of Mrs. Sutton. Mr. Sutton was driving. When Officer Miller asked him to display his driver's license, Sutton "ignored" him. When Miller demanded the license a second time, Sutton again ignored the request and said something to Miller about finding his keys, which he said he had dropped. As Miller testified, "he had a key ring in his hand and he was having trouble with his keys. He was dropping them. At this—I could smell the odor of alcohol. . . . It was strong."

Miller then ordered Sutton to place his hands on top of the car, which Sutton refused to do, telling Miller he had been watching too much television. Miller then physically placed Sutton's hands on top of the car and determined that Sutton was not armed. These activities were accompanied by what is described as belligerent behavior by Mrs. Sutton which drew a crowd of some fifteen (15) to twenty (20) persons from a nearby restaurant. Mrs. Sutton was arrested for disorderly conduct, but she resisted attempts to be placed in a police car.

Officer Miller gave John Sutton a "field test" for drunkenness, whereby Sutton was required to stand erect, tilt his head back, stretch both arms out in front of him, and touch his nose with his middle finger. He failed on both hands, or as Miller testified, ". . . he completely missed." Miller added that "while he was standing taking the test, he was swaying, his balance was unsteady." Miller gave no other tests because he was "afraid he'd fall down."

Two other officers also testified as to respondent's intoxication. Officer Turner, who had joined in the chase, testified that respondent "appeared to be intoxicated," judging from "his behavior and the strong smell of alcohol."

Also on the scene was Officer Tanner, who had responded to the radio alert during the high speed chase, but who did not arrive until the chase ended. At the respondent's request, Tanner gave the respondent three (3) additional "field sobriety tests." In the first, respondent was asked to walk a straight line, which he failed due to "wobbling." In the second, Tanner dropped a dime on the pavement and asked defendant to pick it up. Defendant "fumbled" with the dime before picking it up. Finally, Tanner gave the nose-touch test as given by Miller, with these results:

"Well, when he tilted his head back, I had to help him because he was starting to fall backwards, losing his equilibrium, and when he finally—when he did finally tilt back and tried to touch, he was touching like the upper forehead or check area, you know."

Tanner also testified that he smelled alcohol on defendant.

The three (3) policemen on the scene called their supervisor, Captain Brawley, and while awaiting his arrival, they permitted the defendants to sit in their car. However, when Turner and Tanner turned to go to the restaurant to make phone calls, and Miller began filling out his report, the defendants left the car and proceeded "in a hurry" to the Sutton office building, where they stayed with the doors locked. While in the office, Mrs. Sutton made a futile attempt to obtain help from the Mayor, whom she was never able to reach.

The police had the car towed away, and took out warrants the following day, on Saturday. Prior to issuance of the warrants, John Sutton visited the home of the Police Commissioner and registered an official complaint charging the officers with police brutality. On Saturday evening, when police called the Suttons to inform them that the warrants were out and that they were on their way to the Sutton home to pick them up, the defendants both fled to a motel for the night. On the following Sunday afternoon, they called a lawyer and turned themselves in.

The defense was that John Sutton was not drunk and that the warrants, which were issued on the Saturday afternoon following the Friday night incident on which they were based, were in retaliation for the Suttons' complaint against the officers involved.

The defense produced a number of witnesses who had been present with the Suttons at a cocktail party immediately before the incident, testifying that they did not see the Suttons consume much alcohol, and that the Suttons did not appear intoxicated when they left the party. Sutton stated that the sobriety tests were given at his request and that he passed them.

The defense also produced a number of photographs of the road in an attempt to show that Sutton could not have driven his car at the speeds ascribed to him.

Both the Suttons confirmed that they did not cooperate when stopped, but sought to show that their non-cooperation was reasonable because John Sutton had lost valuable keys, Mrs. Sutton was suffering from ill health which was aggravated by being forced to wait in the cold without her coat, and both were afraid of continued acts of police brutality.

In reversing the conviction, the Court of Criminal Appeals found the prosecutor's argument on these two subjects improper: 1) a statement that an acquittal could result in civil suits against the police; 2) allusions to the wealth and social status of the defendants. Respondent urges additionally that it was prejudicial error for the prosecution to refer to the failure of the defendants to call a particular witness, and to suggest that the jury be guided by television police shows in determining the reasonableness of defendants' conduct. All prosecution arguments assigned as prejudicial were made during the State's rebuttal argument. The trial judge sustained objections to these arguments when made, except for the objection to the argument concerning television police shows. No cautionary instructions were requested, and none were given.

■ In determining whether statements made in closing argument constitute reversible error, it is necessary to determine if the statements were improper, and if so, whether the impropriety affected the verdict. *Judge v. State*, 539 S.W.2d 340 (Tenn.Cr. App.1976); see *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758 (1965).

■ Because argument of counsel is a valuable privilege that should not be unduly restricted, our courts give wide latitude to counsel in arguing their position in a case to the jury, and the action of a trial judge in controlling arguments of counsel will not be reversed absent an abuse of discretion. *Smith v. State*, 527 S.W.2d 737 (Tenn.1975).

■ Closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." *Russell v. State*, 532 S.W.2d 268, 271 (Tenn. 1976). Where the criminal defendant raises

an issue in his defense, he cannot complain of references to the issue by the prosecution, or argument on that issue, so long as the argument is fairly warranted by the facts and circumstances of the case. See *Gamble v. State*, 215 Tenn. 26, 383 S.W.2d 48 (1964); *Coke v. State*, 208 Tenn. 248, 345 S.W.2d 673 (1961); *Smith v. State*, 205 Tenn. 502, 327 S.W.2d 308 (1959); *Dortch v. State*, 517 S.W.2d 24 (Tenn.Cr.App.1974); see also *United States v. Hoffa*, 349 F.2d 20, 50–51 (6th Cir. 1965).

The record in this case amply demonstrates that the allegedly prejudicial and improper arguments regarding possible civil liability and the wealth and social status of defendants were made in response to issues raised by the defense.

The majority of the defense efforts during the three day trial of this case were directed to showing that the charges filed against the Suttons were made in an effort by the police to protect themselves from the Suttons' charges of police brutality. Defense counsel even put the prosecuting attorney general on the stand and asked him about his investigation of the case in an apparent effort to show that the prosecution had motives in the case besides the punishment of the guilty. Defense counsel made several references to the fact that he was a civil lawyer, and in closing argument, stated this:

". . . If it were an ordinary criminal prosecution, in the first place, I wouldn't be over here. I'm a civil lawyer. I do my work across the street.

Mr. Ruth, who has helped throughout the case, and who will make the closing for the defendants—Mr. Ruth was formerly an Assistant Attorney General. He was chief prosecutor. He's infinitely more knowledgeable in matters involving criminal law than am I. If it were an ordinary criminal case involving two misdemeanor charges, the Suttons would not have employed two lawyers to defend them against what they believe to be unjust charges arising out of unjust arrests."

Defense counsel repeatedly referred to the trial as a "grudge match," at one point speculating that had Officer Turner, the prosecutor listed on the indictments, wanted to drop the disorderly conduct charge, the State "wouldn't let him, because it's a grudge fight."

Continuing this line of argument, defense counsel stated this:

"But after the [John Sutton's] complaint was formally registered, as a result of his indignation to the way in which he and his wife were treated the night before, did the officers have, even up to this point, any choice but to push and push and push toward conviction?"

In commenting on the prosecution's failure to produce photographs taken of the Suttons' bruises, defense counsel said, "[w]hat is this, some kind of conspiracy? I submit to you that it's some kind of cover-up." Defense counsel further characterized the testimony of the police officers who were present at the scene that they had no interest in the Suttons' conviction as "pure unmitigated baloney."

Although it might be argued that these statements refer only to the formal complaint made to the police department by the Suttons, and not to the possibility of civil litigation against the police, we are not forced here to draw so fine a line because respondent opened the door to comment about the possibility of a civil lawsuit in his cross-examination testimony, as follows:

"Q So the first person you wanted to get in touch with about being arrested was the Mayor and the second person was the Commissioner of Police?

A You can arrest me for anything I'm guilty of.

Q And when the warrants—then you still didn't turn yourself in until a day after the warrants, the following day after you found out warrants had been issued by a Judge?

A No, because Sergeant Reno had told me that the Police Department was afraid of libel suits, and to me this resembled a smoke screen as a diversion."

After the jury had heard all of the above, the prosecutor made the following remarks, which were objected to and assigned as prejudicial error, as follows:

"Let's look at this trial. Talking about the nightmare not being over, why do you think they've got a civil lawyer? Use your common sense. Why not just a criminal lawyer? Why get a civil lawyer? Following up their complaints of police brutality, the civil rights act. Well, as soon as we come out of here with a not guilty and we persuade that jury that they're stupid and not guilty, we'll sue in civil court.

MR. RUTH: Objection.

MR. LEE: May it please the Court, I object.

MR. RUTH: He knows that that's improper.

MR. LEE: I object. I heretofore—get General Young in here. I've offered a full release to the City of Chattanooga and the police force in writing. I think this is highly improper argument.

MR. BEVIL: They've made—they've brought it out from the very beginning, Your Honor, about civil and criminal lawyer, and I think it's right to make an inference based upon what's been happening in here about motivation.

THE COURT: I sustain the objection.

Although we agree in principle with the general proposition that civil liability resulting from an acquittal should never be argued in a criminal case because it has nothing to do with the essential question of guilt or innocence, in the context of this case, the error is harmless beyond a reasonable doubt, defense counsel having attempted to refute the direct testimony of three (3) police officers that John Sutton appeared drunk by showing a motivation for the officers to perjure themselves. The allegedly improper statement merely stated in concise form that which the jury had been told by inferences from the defense throughout the trial.

In our opinion, it was the overwhelming evidence that convicted respondent, not the contested portions of the closing argument.

Three (3) policemen testified that in their opinion, respondent was intoxicated; all three (3) smelled liquor on his breath; all said his behavior was commensurate with intoxication; two (2) policemen said respondent failed a total of four (4) field sobriety tests.

This testimony was corroborated by the fact that respondent had just left a party where he admitted drinking; he drove his car in sleet and snow at night in a 45 mile per hour zone on a road with numerous curves and hills at speeds over seventy (70) miles per hour; he refused to stop when chased by police cars; he refused to cooperate when stopped; he fled from police twice, once at the scene, and the next day from his home when he learned police were coming to his home with arrest warrants.

The jury chose to sentence respondent to ten (10) days incarceration and a five hundred ($500) dollar fine, although the statute under which he was convicted permits a minimum sentence of two (2) days incarceration and a ten ($10) dollar fine. See Tennessee Code Annotated § 59–1031, § 59–1035. This sentence reflects that the verdict of the jury was based on a determination that John Sutton was guilty of drunken driving as charged, and not on a desire to insulate the police from civil liability.

Respondent's contention that the prosecution improperly and prejudicially referred to defendants' wealth and social status is likewise without merit. The record is replete with defense references to the defendants' wealth and social status, their two (2) Cadillacs, their real estate businesses, and their busy schedules. Defense counsel specifically put the matter in issue by arguing that "the humiliation and notoriety that these people have been held up to is not—well, is a result of their prominence, not in spite of it."

The prosecution made several allusions to the wealth of the defendants, only one of which was objected to. Without a contemporaneous objection, the error is waived. *Ellis v. State*, 544 S.W.2d 908 (Tenn.Cr.App.1976). However, we note

that the statements not objected to but assigned here as error only answered the defense argument that defendants were on trial because of their prominence, the prosecution contending that defendants should answer for their crimes regardless of their economic and social status. The defense chose to put this issue in the case, and the prosecutor's arguments in response were fairly warranted by the facts and circumstances of the case; under the authority noted above, there would be no error here, even had defendant preserved his right to complain by making contemporaneous objection.

Objection was made to one portion of the prosecution argument which referred to the wealth and social status of defendants, as follows:

"They don't have to put on the burden of proof, as I told you. But Danny Simmons, ladies and gentlemen, was there from start to finish. He was in the back of the car, he was in the car when it raced along Hixon Pike, he was in the car when it stopped, he was in the car when the police got out, he was in the building when they went in and hid—Danny Simmons. They say, 'Well, he's in Alabama and a state witness warrant won't get him.' I submit to you that if they've got the kind of money to hire two lawyers, a civil and a criminal lawyer, then they've got the kind of money to get Danny Simmons back here to testify.

MR. RUTH: If Your Honor please, I think that's improper, and I object.

THE COURT: Sustain the objection."

■ As the proof and statements of defense counsel showed that defendants were wealthy and socially prominent, the prosecution was merely arguing a permissible inference from the facts by suggesting that defendants could have produced the witness had his expected testimony been favorable. It is not error for the prosecuting attorney to argue that which is warranted by reasonable inference from the evidence adduced at trial. *State v. Beasley*, 536 S.W.2d 328 (Tenn.1976); *Smith v. State*, 205 Tenn. 502, 327 S.W.2d 308 (1959);

*Briggs v. State*, 3 Tenn.Cr.App. 471, 463 S.W.2d 161 (1970).

Respondent also asserts that the above-quoted argument regarding defendants' wealth is improperly prejudicial because it refers to the failure of defendants to produce Danny Simmons as a witness.

■ Comment on the failure of a defendant to call a witness is generally permissible, so long as there is no implication that the State is referring to a failure of the defendant himself to testify. E. g., *Wheeler v. State*, 220 Tenn. 155, 415 S.W.2d 121 (1967); *Gamble v. State, supra*; *Parks v. State*, 543 S.W.2d 855 (Tenn.Cr.App. 1976). Defense counsel also used this same trial tactic in pointing out that the State had not interviewed or called any witnesses from the crowd which gathered after the Suttons were stopped.

Respondent also contends that the trial judge erred in allowing the prosecution to allude to police practices shown on television to show the unreasonableness of defendants' actions. When objection was made on this point, the prosecution was responding to defense arguments that the Suttons had acted reasonably under the circumstances, and that their non-cooperation and flights therefore should not be used as indicative of their guilt. The prosecutor said, "What's reasonable? Again going back to these police shows on TV—if you're under arrest, if you go in your office and hide, common sensically, who would be the first person to call?"

Defense counsel objected to this remark on the basis that the jury should not be told to equate the behavior of television characters with common sense. The trial judge overruled the objection, but the prosecution did not thereafter refer to television in his argument.

■ In support of this argument, respondent cites only *Bowling v. State*, 3 Tenn.Cr.App. 176, 179, 458 S.W.2d 639, 641 (1970), in which it was stated that "[a] prosecutor should not inject extraneous issues in the case by his argument." We agree with this statement in *Bowling*, and

we agree with respondent that the trial judge should have sustained his objection. However, no additional comments about police television shows were made by the prosecution and in our opinion, the minor impropriety related above did not affect the verdict; thus, this error was harmless. See *Harrington v. State, supra*; *Judge v. State, supra*; *Bowling v. State, supra.*

The judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court is reinstated. Costs are adjudged against respondent, John R. Sutton, Jr.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.