**STATE of Tennessee, Appellee,**

v.

**Carlester Sharod HAYES, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 29, 1981.

Affirmed by Supreme Court Oct. 4, 1982.

Walker Gwinn, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, Kathleen Spruill, Asst. Dist. Atty. Gen., Gerald Easter, Asst. Dist. Atty. Gen., Memphis, for appellee.

DWYER, Judge.

## OPINION

Pursuant to Tennessee Rule of Appellant Procedure 3(b), appellant appeals from his conviction for committing the offense of criminal sexual assault in the first degree, with punishment by the jury at confinement for ten years.

The issues: (1) whether the post-indictment pretrial showing of the appellant to the alleged victim by a State attorney general violated the right to counsel and whether this showup was so impermissibly suggestive as to taint the in-court identification; (2) whether the trial judge properly determined that the victim, Tiffany Mathis, was a competent witness; and (3) whether the evidence is sufficient to sustain the conviction.

The last issue questioning the sufficiency of the evidence prompts our narration of that evidence as found from our reading of the record of this protracted trial. Tiffany Mathis, age six, at the time of the assault lived with her parents at 152 Bickford, Apartment 1, in the City of Memphis. Tes-

tifying as a witness for the State, she related that on the morning of May 21, 1979, while walking to her neighborhood school, the appellant grabbed her by the arm, took her behind a building, and tried to put "hisself" into her. When she screamed he zipped his pants up and "inserted his finger into her private parts". Next, appellant took her to an apartment, where a woman told him to let her go. As Tiffany headed towards her home the appellant followed. Her father, who was outside, asked why she was crying and at the same time the appellant asked Tiffany's father for a cigarette. The father, rebuffing the appellant, told Tiffany to go inside the house. The mother in examining Tiffany found her undergarments were "sticky wet" and her vagina red and inflamed with a cut in the interior.

The following Wednesday, May 23, 1979, Tiffany told her mother that she had been assaulted and led her parents to an apartment where the assailant had allegedly taken her. Based on a picture there, Tiffany identified Mrs. Graham as the woman with the big stomach who told the appellant to let her go. The parents' investigation continued, resulting in the location and identification of the appellant by Tiffany. When the parents sought to question him he fled, seeking sanctuary in a grocery store where he was subsequently arrested by the police that day.

About a week later, after observing the appellant's sister at a store, Tiffany identified her as the woman who told the appellant to let her go rather than Mrs. Graham. The appellant's sister was pregnant at the time of the identification.

The appellant denied the assault, contending he was in his apartment with his mother at the suspected time. Appellant's mother corroborated his story as to his being present in the home. Ms. Johnnie Mae Williams, an upstairs neighbor, further corroborated the appellant in that she had loaned him an iron that morning. This bolstered the appellant's testimony and his mother's that he had only been out of the apartment at the most a few minutes. Appellant's sister testified that on the day in question she was pregnant and that she did not see him come into the apartment with a little girl. She also related that a boy named Michael who lived at 165 Bickford, Apartment 5, looked similar to the appellant.

With Tiffany identifying the appellant as the one who tried to put "hisself" into her and as the one who inserted his finger into her private parts, coupled with Tiffany's father observing appellant following her on the morning of the assault and his fleeing from Tiffany's parents, this evidence, accredited by the jury, is sufficient. While there are and were developed discrepancies in the testimony of Tiffany and her mother and father, these are matters within the exclusive domain of the jury. Their verdict has established the testimony and the theory of the State. Upon appeal the State is entitled to the strongest legitimate view of the trial evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The evidence is sufficient to convince a rational trier of fact of the guilt of appellant beyond a reasonable doubt, Tennessee Rule of Appellate Procedure 13(e); therefore, the evidence issue is overruled.

Whether Tiffany was a competent witness is a matter which addresses itself to the sound discretion of the court. *State v. Braggs,* 604 S.W.2d 883, 885, 886 (Tenn.Cr. App.1980). Any person capable of understanding the obligation of an oath is competent to be a witness. T.C.A. § 24–101. The record reflects Tiffany testifying that people who tell lies go to hell and that she promised to tell the truth, which demonstrated her understanding of the obligation of the oath. *Logston v. State,* 50 Tenn. 414, 419 (1872); *State v. Braggs, supra.* There has been no showing that the trial court abused its discretion in determining Tiffany was a competent witness. This issue is overruled.

Lastly, with no objection to Tiffany's testimony that prior to trial she viewed the appellant sitting alone in the courtroom and with no motion for a jury-out hearing to determine whether the showup was un-

**4**

constitutionally suggestive, this issue has been waived. T.R.A.P. 36(a); *State v. Sutton,* 562 S.W.2d 820, 825, 826 (Tenn.1978).

Accordingly, the judgment of the trial court is affirmed.

DAUGHTREY and BYERS, JJ., concur.