# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs March 5, 2019

## STATE OF TENNESSEE v. JARED WORTHINGTON

**Appeal from the Criminal Court for Shelby County**
**No. 17-00687     J. Robert Carter, Jr., Judge**
_____

### No. W2018-01040-CCA-R3-CD
_____

The Defendant, Jared Worthington, was convicted by a Shelby County Criminal Court jury of DUI per se, a Class A misdemeanor, and reckless driving, a Class B misdemeanor, after the State dismissed his DUI by impairment charge. He was sentenced by the trial court to concurrent terms of one day for the reckless driving conviction and 11 months, 29 days for the DUI conviction, suspended to probation after service of ten days in the county jail. On appeal, the Defendant raises the following issues: (1) Whether the trial court erred in its rulings regarding the admission and publication of the dashboard camera video of the Defendant's arrest; (2) Whether the trial court violated the Tennessee constitution by disparaging the evidence, which took the form of instructing the jury that much of the video was irrelevant; (3) Whether the trial court erred by not allowing defense counsel to question officers about the potential bias created by the fact that the Tennessee Bureau of Investigation ("TBI") blood alcohol or drug concentration test fee ("BADT") was collected only in those cases in which a defendant is convicted; and (4) Whether the trial court "shifted the burden of proof," thereby violating the Defendant's constitutional due process rights, by asking defense counsel in the presence of the jury whether the Defendant intended to put on any proof. Following our review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, Jr., JJ., joined.

Benjamin Michael Israel, Memphis, Tennessee (on appeal); and John McNeil, Memphis, Tennessee (at trial), for the appellant, Jared Worthington.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Sam Winning and Kenya Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On the morning of July 31, 2016, Memphis Police Officer Brian Pirtle responded to the scene of a one-vehicle crash caused by the Defendant's running his pickup truck into a utility pole. The Defendant claimed he swerved to avoid a car that had pulled in front of him but Officer Pirtle was unable to find any skid marks or other evidence to corroborate that claim. In addition, he detected the odor of alcohol on the Defendant's person and observed that the Defendant's eyes appeared bloodshot. A DUI officer who responded to the scene conducted a series of field sobriety tests, on which the Defendant performed well but not perfectly, and administered a Breathalyzer test, which showed that the Defendant had a blood alcohol concentration ("BAC") of .141 percent.[1]

The Defendant was subsequently indicted by the Shelby County Grand Jury for DUI by impairment, DUI per se, and reckless driving. The Defendant was tried on all three charges before a Shelby County Criminal Court jury, which was unable to reach a unanimous verdict, resulting in a mistrial. Before the start of the Defendant's March 12-14, 2018 retrial, the State dismissed the DUI by impairment count of the indictment, leaving the Defendant to be tried before a second Shelby County Criminal Court jury only on the charges of DUI per se and reckless endangerment.

At trial, the State presented three witnesses in addition to Officer Pirtle. Memphis Police Officer Lawrence Marcrum, the DUI officer who conducted the field sobriety and Breathalyzer tests, described his training as a DUI officer, the Defendant's performance on the field sobriety and Breathalyzer tests, and the Defendant's initial failure to blow with sufficient force to generate a reading on the instrument. Memphis Police Officer Robert Galison, the keeper of the records for the DUI unit, identified the Defendant's Breathalyzer results and testified that Officer Marcrum had been certified on the instrument, an "Alco-Sensor 5," on August 22, 2013. Finally, TBI Special Agent Forensic Scientist Robert Marshall, the keeper of the records related to the Breathalyzer instruments, testified that he runs a calibration check on each instrument every 90 days

---

[1] The DUI officer testified that he obtained two readings of the Defendant's BAC from tests taken twenty minutes apart. The first time, the Defendant's BAC registered .146 percent and the second time it registered .141 percent. Consistent with protocol, the lower of the two results was used for charging purposes.

and tests each instrument for accuracy once a month. He stated that he performed a calibration check on the instrument involved in the Defendant's case on May 18, 2016, and again on August 10, 2016. Both times, the instrument was operating properly. The trial court declined to allow defense counsel to cross-examine the police officers and TBI agent about the potential bias created by the fact that the $250 BADT fee was only paid to the TBI in cases in which the defendant was convicted.

The Defendant opted not to testify and presented no evidence in his defense.

At the conclusion of the trial, the jury convicted the Defendant of the two remaining indicted offenses.

## ANALYSIS

### I. Trial Court's Rulings with respect to the Dashboard Camera Video

The Defendant first contends that the trial court abused its discretion in its rulings with respect to the admission and publication to the jury of the DUI officer's dashboard camera video recording of the Defendant's arrest. The Defendant argues that the trial court erred by initially ruling that the video was irrelevant to the DUI per se charge and prohibiting defense counsel from mentioning the video during opening statements; by ruling that the entire video could not be admitted because it contained self-serving hearsay statements by the Defendant; and by ultimately admitting the entire video for the jury to view in an unorthodox manner. The State responds by arguing, *inter alia:* that the trial court properly excluded the video until it became relevant; that the trial court properly declined to permit any reference to the video until its relevance was established; and that the Defendant waived any objections to the manner in which the trial court admitted the video by not raising a contemporaneous objection at trial, by not including an adequate record on review, and by not raising the issue in his motion for new trial. We agree with the State.

As a general rule, "[a]dmission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004). Trial courts also "have wide discretion in controlling arguments of counsel, including opening statements, and a trial court's ruling concerning the arguments of counsel will not be reversed absent an abuse of discretion." State v. Stacy Johnson, No. W2004-00464-CCA-R3-CD, 2005 WL 645165, at *14 (Tenn. Crim. App. Mar. 15, 2005) (citing State v. Sutton, 562 S.W.2d 820, 823 (Tenn.1978)). We review this issue, therefore, under an abuse of discretion standard.

To understand the context in which the trial court made its rulings, we must review in some detail the somewhat lengthy discussion/argument that counsel had with the court about the video. The initial discussion occurred before jury selection on the first day of trial after the prosecutor announced that the State was going to dismiss the DUI by impairment count of the indictment. The trial court asked whether the prosecutor intended to play the entire video, as he had during the first trial. The prosecutor responded that he thought he needed to show at least part of the video and believed if that were the case defense counsel "would have the right to play the whole video[,] including the field sobriety test."

The trial court expressed doubt about whether the field sobriety tests were relevant to the DUI per se charge and also noted that much of the video consisted of the Defendant's "self-serving hearsay" about his educational background and his "hopes and plans for the future." Defense counsel, citing the rule of completeness, argued that the entire video should be played in fairness to the Defendant. The court replied that it might allow the defense to play a portion of the video if counsel could show a valid reason, such as to impeach the officer's testimony, but did not believe the rule of completeness justified the introduction of the entire video.

The following day, the prosecutor announced that the State had decided not to introduce the video into evidence in its case-in-chief and made a motion in limine that the defense be prohibited from mentioning any part of the video that was not reasonably likely to come into evidence in the case. Defense counsel responded that he intended to mention the video. When asked what part of the video he intended to introduce, defense counsel said that he thought he needed at least parts of the video to satisfy the Sensing requirements. See State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). The trial court replied that Sensing motions should have long since been heard and that there were other ways to meet the Sensing requirements. The trial court agreed, however, that parts of the video might be relevant, depending on other evidence introduced at trial, and suggested that it would be better if defense counsel refrained from mentioning the video during opening statements and instead waited until the court could determine which parts were relevant as the issue arose during trial.

As the discussion continued, defense counsel again expressed his belief that the entire video was relevant and argued that the portion showing the field sobriety tests, at a minimum, was relevant to rebut the inference that the Defendant was under the influence. The State responded by arguing that the rebuttable presumption was not part of the DUI per se statute.

After reviewing the statute, the trial court agreed with the prosecutor. The court again ruled, however, that although the field sobriety tests were "really not relevant" to

the charge of DUI per se, the court might admit them depending on the other proof introduced. The court also specifically ruled that defense counsel was not to mention the video during his opening statement:

> I do think, however, the . . . defense would be allowed to show, . . . or the State, the Field Sobriety Testing, and here's my rationale on this. It's [sic] relevance, and it's really not relevant to the issue of .08, specifically, but if -- and this again, I'm not putting words . . . in anyone's mouth, but . . . the defense in this case more or less last time was the instrument has to be out of whack. It couldn't have registered that high. I mean, . . . that was in essence the defense. And to the extent . . . if that's how the proof is articulated, I don't -- I don't know.
>
> Again, I'm not going to charge the jury that . . . you know, they have to find per se. They have to make any -- I mean, I'm going to charge them. If they find he's in possession of the motor vehicle, and his breath was .08, those are the elements.
>
> But I do think that if the defense wants to or the State wants to -- to show the Field Sobriety Testing position, I really don't see that it's relevant, but I also think it will run the risk of hampering a -- a defense to put on would -- would be a risk that, I -- I could see under certain circumstances. So I think my- - my sort of proviso is probably going to be, that I will probably allow that depending on how the cross-examination and . . . everything shapes up.
>
> But I'm going to tell you, I am still ruling, don't mention it in opening statements, because it will have to be subject to how the -- the situation goes. But . . . I think that that portion of it would be admissible if -- if you chose . . . to demonstrate that portion.

Defense counsel agreed that he would not mention the video in opening statements but asked if he could mention the fact that field sobriety tests were administered. When the trial court repeated that the field sobriety testing was irrelevant to the charge of DUI per se, defense counsel persisted by arguing that he intended to "put on the Field Sobriety Test" and "expect[ed] the jury [was] going to see that." At that point, the trial court responded that defense counsel had "pushed [the court] into a corner" and that it was therefore ruling that the field sobriety testing was not going to be admissible and counsel should not mention it. The court added that it could envision a situation in which the field sobriety testing might become relevant, but if defense counsel insisted on "bringing it into the opening," the trial court would "take care of it."

The first mention of the video before the jury occurred during defense counsel's cross-examination of Officer Pirtle. Defense counsel asked if the officers had moved the Defendant from Officer Pirtle's vehicle to Officer Marcrum's, and Officer Pirtle responded that he believed he had "for video reasons." Defense counsel then asked why the Defendant could not take the Breathalyzer test in Officer Pirtle's vehicle, to which Officer Pirtle responded that the DUI vehicles had "specialized equipment in there and specialized video equipment for that purpose."

At the conclusion of Officer Pirtle's testimony, the prosecutor informed the court that based on the officer's cross-examination testimony, he intended to introduce the video but had no intention of publishing it to the jury. The court agreed and reiterated that it did not intend to allow any of the video to be shown unless counsel could articulate its relevance. Defense counsel then renewed his objection to anything less than the entire video being played if any portion were shown.

During Officer Marcrum's direct examination testimony, the State elicited that the "whole procedure" had been captured on the officer's dashboard camera. After Officer Marcrum identified the CD of the encounter, the State moved to admit it into evidence without any objection raised by the defense.

When asked on cross-examination which portions of the field sobriety tests the Defendant had failed, Officer Marcrum, consulting his "DUI Field Sobriety Report," testified that the Defendant had failed to step "heel to toe" and had turned in the wrong direction after completing the initial nine steps of the heel to toe test. At that point, defense counsel moved that the field sobriety report be marked as the next exhibit. The State made no objection, and the trial court therefore admitted the report into evidence. [2]

After the officer explained what he meant by marking that the Defendant had started the test too soon, defense counsel requested that the video be published "for impeachment." The trial court denied the request, ruling that there had not been a foundation laid for impeachment and that counsel could not "just publish the whole thing." Defense then continued questioning the officer in detail about the portions of the field sobriety tests that the officer had marked the Defendant as failing and whether the video would corroborate the officer's report. Twice during his cross-examination, defense counsel received permission from the court to have the officer's memory refreshed by playing portions of the video outside the jury's presence. The first time this

---

[2] The trial court later stated that it purposefully waited to give the State a chance to object before it admitted the report as an exhibit. The prosecutor explained that he did not object because he thought the court had already ruled that the field sobriety tests were irrelevant and inadmissible.

occurred, the trial court ruled that defense counsel had laid a sufficient foundation for impeachment to show the jury the field sobriety test portion of the video.

Before the jury returned to the courtroom after the second jury-out showing of the video, the prosecutor informed the trial court that he had overheard one of the jurors say that she wanted to see the videotape. In light of that comment, the prosecutor requested that the court instruct the jurors that they could watch the entire video during deliberations. After further discussion of the issue, during which the court repeated that it thought most of the video was irrelevant, the trial court agreed to instruct the jury that it would be allowed to watch the entire video. The court first, however, received the assurances of the lead prosecutor and defense counsel that each wanted the entire video made available to the jury.

When the jury returned to the courtroom, the trial court, without objection by the defense, instructed the jurors that the video had been marked into evidence and that the jurors were free to watch it in its entirety during deliberations if they chose, although some of it was "not really relevant to this case one way or another[.]"

The only other mention of the video occurred during the Defendant's <u>Momon</u> hearing when he stated that he had intended to testify if the video were not shown but no longer felt the need to, and the next day when the prosecutor said that he had brought a computer for the jury to use to watch the video during deliberations.

We can find no abuse of discretion in the trial court's handling of the evidence. Tennessee Code Annotated section 55-10-401, the DUI statute, provides in pertinent part that

> [i]t is unlawful for any person to drive or be in physical control of any . . . motor driven vehicle . . . while:
>
> > (1) under the influence of any intoxicant . . . that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess; [or]
> >
> > (2) [t]he alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more[.]

Tenn. Code Ann. § 55-10-401(1), (2).

- 7 -

The trial court properly found that the rebuttable presumption is not applicable to the DUI per se charge, the elements of which are listed in subsection (2) of the statute, and, thus, that the video of the field sobriety tests and the field sobriety report were not automatically relevant. See State v. Conway, 77 S.W.3d 213, 220 (Tenn. Crim. App. 2001) (holding that rebuttable presumption statute "has no application to a prosecution for DUI per se"); State v. Synder, 835 S.W.2d 30, 32 (Tenn. Crim. App. 1992) ("Neither the need to prove impairment nor the rebuttable presumption . . . applies in [DUI per se] cases."); State v. Akan Terry Stein, No. M2016-01345-CCA-R3-CD, 2017 WL 4640485, at *3 (Tenn. Crim. App. Apr. 19, 2017) (concluding that jury instruction on rebuttable inference of intoxication created by the fact that defendant had a blood alcohol level of .08% or greater "could not properly be given with the charge for DUI per se because it does not properly state the law for the offense.").

The trial court also properly found that the rule of completeness did not justify the introduction of the entire video, much of which contained the Defendant's self-serving statements about his recent graduation as a chiropractor, his having never before been in trouble,[3] and his fear that a DUI conviction would ruin his life and his opportunities for employment in his profession.

Tennessee Rule of Evidence 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Tenn. R. Evid. 106. "Rule 106, often referred to as the *rule of completeness*, reflects a concern for fairness and is designed to let the jury assess related information at the same time rather than piecemeal." Neil P. Cohen et al., Tennessee Law of Evidence § 1.06(2)(a) (6th ed. 2011). "Rule 106 applies a rule of completeness when *fairness* so requires." Id. § 1.06 (2)(b). The trial court is granted broad discretion to determine whether the rule of completeness should result in the admission of evidence, and this court therefore reviews the trial court's decisions in this matter under an abuse of discretion. Id.; see also State v. Torres, 82 S.W.3d 236, 252 (Tenn. 2002); State v. Keough, 18 S.W.3d 175, 183 (Tenn. 2000).

We have reviewed the entire video and agree with the trial court that fairness did not require that it be admitted in its entirety. Indeed, we are somewhat perplexed as to why defense counsel wanted so badly for the entire video to be shown rather than just the field sobriety test portion, in which the Defendant appeared to have performed remarkably well. A good portion of the video covers the conversation between the

---

[3] The Defendant's claim of never before having been in trouble is contradicted by his presentence report, which shows a June 6, 2016 arrest for domestic assault in Arnold, Missouri.

Defendant and the officer during the initial twenty-minute wait before the Defendant first unsuccessfully attempted the Breathalyzer test and the subsequent twenty-minute wait before he could attempt it again. During that time, the Defendant talked about having just graduated as "a doctor," which he later clarified as having completed a doctor of chiropractic program, expressed his belief that he had passed the field sobriety tests, agonized over whether to take the Breathalyzer test, and implored the officer to allow him to postpone his decision about taking the Breathalyzer test until after he had an opportunity to consult with a lawyer or at least with his stepfather, who had apparently responded to the crash site. Also during that conversation is the officer's mention of an eyewitness's report that the Defendant had been swerving over the roadway before the crash occurred.

Although the Defendant came across as quite likeable during the beginning portions of the video, he became less so toward the end. For example, the Defendant asked multiple times if there was any way the officer could help him out should his Breathalyzer test results show that his blood alcohol level was over the legal limit, responded to the officer's comment that he was an intelligent man by stating that he was very intelligent, and appeared to be attempting to delay the Breathalyzer test results by purposefully blowing with insufficient force during his first two attempts with the instrument.

The Defendant argues that the trial court prejudiced his defense by prohibiting defense counsel from mentioning the video during opening statements, by not allowing counsel to have the exhibit admitted and shown in its entirety to the jury in a normal manner during the course of the trial, and by admitting it "late in the trial with the caveat that it should be ignored." We, however, agree with the State that the Defendant has waived these issues by his failing to include an adequate record for review, by not only failing to object but appearing to approve of the manner in which the trial court admitted the video, and by not including as an issue in his motion for new trial any complaint about the manner in which the trial court admitted the video.

The Defendant did not include the transcripts of opening statements or closing arguments in the record on appeal. The Defendant, as the appellant, bore the burden to prepare an adequate record for appellate review, see State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993), and, in the absence of an adequate record, this court must presume the trial court's ruling was correct. See State v. Richardson, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). The Defendant also failed to raise a contemporaneous objection to the manner in which the trial court admitted the video, or to raise any complaints about the "unorthodox" admission of the video as an issue in his motion for new trial. As such, we agree with the State that these issues are waived. See Tenn. R. App. P. 36(a) (providing that the failure to make a contemporaneous objection waives the issue on appeal); Tenn.

R. App. P. 3(e) (providing for waiver of issues not specifically stated in a motion for new trial).

The Defendant asserts that the trial court exercised a double standard by allowing the State to "bolster the credibility of the Breathalyzer test with the officers' testimony that [the Defendant] appeared to be intoxicated" while "effectively forbid[ing]" the Defendant from introducing evidence that would contradict the officers' testimony. He also asserts that "[t]he trial judge prevented the jury from viewing the video during the entire trial[,]" which put the Defendant at a "tremendous disadvantage."

Our review of the record, however, shows that the Defendant is mischaracterizing the court's rulings. The trial court repeatedly stated that it would in all likelihood allow defense counsel to introduce portions of the video upon a showing of relevance. Furthermore, the trial court specifically ruled during Officer Marcrum's cross-examination testimony that defense counsel had established a sufficient foundation to impeach the officer's testimony by showing the field sobriety portion of the video. It was defense counsel's choice not to request that the field sobriety portion of the video be published to the jury during Officer Marcrum's cross-examination.

We, therefore, conclude that the Defendant is not entitled to relief on the basis of any of his claims surrounding the trial court's rulings about the dashboard camera video.

## II. Trial Court's Instruction to the Jury Regarding the Video

The Defendant next contends that the trial court violated the Tennessee Constitution by impermissibly commenting on the evidence during his instruction to the jury about the video. After defense counsel assured the trial court he wanted the entire video made available for the jury's viewing, the trial court issued the following instruction to the jury:

> All right. Ladies and gentlemen, before we resume, let me, if I can, human nature being what it is, it's the elephant in the room. We've been talking about a video and this witness has been asked about a video and -- and other witnesses may be asked about it. I have marked that video into evidence, and I have made rulings that not all of it pertains to this case.
>
> In other words, I've ruled that some [o]f it's not really relevant to this case one way or another, but I have marked it as evidence. And what that means is, when you go to deliberate, along with all of these other photographs, pieces of paper, and everything that you have, you will have that. And if you choose to watch -- you know, watch every minute of it

over and over again or parts of it or whatever you choose to do, that will be in your, you know, custody to -- to look at or rely upon.

So, I just want to tell you that by -- by way of saying, we do still have to do some things that, you know, aren't -- that don't really apply to your position. So we still occasionally may be asking you to step out. But as far as looking at that, you'll be able to see it if you want to. And that -- that's the -- the short answer to the question. So it'll be there for you. It's in evidence.

The Defendant argues that by instructing the jury that much of the video was irrelevant, the trial court "disparaged the evidence" in violation of Article VI, Section 9 of the Tennessee Constitution, which forbids judges from charging "juries with respect to matters of fact." More specifically, the Defendant asserts that the trial court "violated this constitutional protection when [it] gave the jury confusing and erroneous instructions to discount the probative value of the dashboard camera video." The State responds that the Defendant has waived this issue for his failure to raise it at trial or in the motion for new trial. The State further argues that the trial court's comments were not improper. We agree with the State.

First, as the State points out, the Defendant neither raised a contemporaneous objection at trial nor raised the issue in his motion for new trial and, thus, has waived the issue for appellate review. Second, we agree with the State that, notwithstanding waiver, there is nothing in the trial court's remarks that constitutes an impermissible comment upon the facts. It is clear from the record that the trial court did not instruct the jury to discount the video or direct the jury to particular parts that the court found to be irrelevant. Instead, by way of explanation for the fact that the jury had been repeatedly excused from the courtroom, the trial court merely informed the jury that it had found parts of the video irrelevant, but the jury was free to watch the entire video while deliberating if it wished.

We conclude, therefore, that the Defendant is not entitled to relief on the basis of this claim.

## III. Cross-examination for Bias

The Defendant next contends that the trial court violated his constitutional right to confront the witnesses against him by forbidding defense counsel from cross-examining the police officers and TBI agent about the potential bias created by the fact that the

BADT fee was only paid to the TBI in cases in which the defendant was convicted.[4] The State argues that the Defendant waived this issue by failing to provide an adequate record for review and by failing to make an offer of proof, despite the trial court affording him the opportunity to do so. The State further argues that, regardless of waiver, the trial court acted within its discretion in prohibiting defense counsel from cross-examining witnesses about the BADT fee. We, once again, agree with the State.

As the State points out in its brief, the Defendant relies for this issue on our court's decision in State v. Rosemary Decosimo, No. E2017-00696-CCA-R3-CD, 2018 WL 733218 (Tenn. Crim. App. Feb. 6, 2018), reversed by State v. Decosimo, 555 S.W.3d 494 (Tenn. 2018), in which we found unconstitutional the statutory fee system under which the TBI was paid a drug testing fee of $250 in cases that resulted in a conviction. Based on that case, which was released after the Defendant's first trial, the Defendant filed a motion to suppress the results of the Defendant's Breathalyzer tests in his second trial. The trial court apparently discussed the Defendant's motion in a hearing held the week before the Defendant's second trial started. Although the transcript of that hearing is not included in the record before this court, the trial transcript reveals that the court noted that the case was pending appeal at the time of the Defendant's trial and was not binding on the court. The court expressed its disagreement with the holding of the case but granted the State's request that the court enter an order prohibiting the TBI from collecting the $250 fee in the event that the Defendant's trial resulted in a conviction.[5] At the same time, the trial court granted the State's oral motion in limine that defense counsel be prohibited from cross-examining the witnesses with respect to the fee structure.

Defense counsel responded to the State's motion in limine prohibiting cross-examination about the BADT fee by stating that he intended to ask a few questions about the fee schedule to "preserve the right for appeal." The trial court ruled that defense counsel could not cross-examine the witnesses about the fee schedule in front of the jury but could make a proffer outside the jury's presence after the witnesses completed their testimony. Although defense counsel agreed and expressed his intention of making a "five-minute proffer," he did not bring the issue up again. Accordingly, we agree with the State that the Defendant has waived this issue.

---

[4] The statute has since been amended. See Tenn. Code Ann. §55-10-413(f).

[5] After our supreme court's reversal of the case, the State filed a Motion to Reconsider in which it formally withdrew its request "for the Court to order the funds from the court costs not be dispersed to [the] TBI." [R, 51] There is nothing in the record to indicate the court's response to that motion.

We further agree with the State that, regardless of waiver, the Defendant cannot show that the trial court erred in limiting the cross-examination of the officers about the fee structure. As previously mentioned, our supreme court reversed our decision that the fee statute was unconstitutional, holding that the statute did not deprive "the defendant of due process guaranteed by both the federal and state constitutions." Decosimo, 555 S.W.3d at 516. The court specifically concluded that the "fee statute does not provide TBI forensic scientists with either a direct, personal, substantial pecuniary interest or a sufficiently substantial institutional financial incentive that qualifies as a possible temptation to any reasonable forensic scientist to falsify or alter test results to produce more convictions[.]" Id. at 516. Further, "a TBI forensic scientist's continued employment depends much more heavily on the forensic scientist's accurate, objective job performance than on any institutional financial incentive to produce test results that increase convictions and generate BADT fees that may or may not be allocated to the forensic services division." Id. at 513.

We conclude, therefore, that the Defendant is not entitled to relief on the basis of this claim.

## IV. Shifting of Burden of Proof

Lastly, the Defendant contends that the trial court impermissibly shifted the burden of proof by asking defense counsel in the jury's presence whether the Defendant intended to put on any proof. The record reveals that the trial court first asked the question after the State rested its case and the jury had been excused from the courtroom. Defense counsel requested a brief recess before making the final decision. When he returned, he announced that he did not intend to put on any proof. Thereafter, the court held the Momon hearing, and the Defendant made a motion for judgment of acquittal. The trial court overruled the motion and, as the jury was re-entering the courtroom, asked defense counsel again if the Defendant intended to put on any proof. When defense counsel replied that they were going to submit the case on the proof, the court instructed the jury that it had seen "all the testimony and all of the evidence" it was going to hear in the case and that the court would instruct the jury on the law when it returned to the courtroom the following day.

The Defendant argues that the trial court should have asked defense counsel the question before the jurors returned to the courtroom and should have reminded the jurors that the Defendant was still protected by the presumption of innocence when it informed them that the defense was not going to put on any evidence in the case. He acknowledges that he failed to object at trial but asserts that the trial court's actions constituted a constitutional error that affected his substantial rights. We respectfully disagree.

- 13 -

As the State points out, the Defendant did not raise any objection at trial or in the motion for new trial. Moreover, he has submitted no authority for his proposition that the trial court was required to instruct the jury on the presumption of innocence at the same time that it informed the jury that the defense was not going to put on any proof, or that the trial court "carelessly disregarded its duty to protect the presumption of innocence" by asking the question of defense counsel in the jury's presence. We, therefore, conclude that the Defendant is not entitled to relief on the basis of this claim.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE