IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2019

**STATE OF TENNESSEE v. MICHAEL DAVID CARTER AND
STEVEN EDWARD CARTER**

**Appeal from the Criminal Court for Sumner County
No. 240-2016, 231-2016    Dee David Gay, Judge**

_____

**No. M2018-01329-CCA-R3-CD**

_____

Following a jury trial, Michael David Carter (Michael Carter) was convicted of aggravated robbery and aggravated assault and Steven Edward Carter (Steven Carter) was convicted of facilitation of aggravated robbery and aggravated assault. Michael Carter was sentenced to twenty years for aggravated robbery, and Steven Carter was sentenced to nine years for facilitation of aggravated robbery. The trial court merged the aggravated assault convictions into the aggravated robbery convictions without imposing a sentence or entering a judgment of conviction for aggravated assault. On appeal, Defendants contend that: (1) the evidence presented at trial was insufficient to support their convictions; (2) the prosecutor improperly made a "Golden Rule" closing argument; and (3) the trial court erred in applying Tennessee Rules of Evidence 608 and 609 to exclude evidence of criminal charges pending against the victim at the time of trial. Michael Carter also contends that the trial court erred in sentencing him as a Range II offender and that his sentence was excessive. We remand for sentencing on the merged aggravated assault convictions and entry of a judgment of conviction for each Defendant pursuant to *State v. Berry*, 503 S.W.3d 360 (Tenn. 2015). We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed
and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Michael W. Taylor (on appeal), and Michael Pickering (at trial), Gallatin, Tennessee, for the appellant, Michael David Carter.

Christopher V. Boiano (on appeal), Hendersonville, Tennessee, and Thomas Boyers (at trial), Gallatin, Tennessee, for the appellant, Steven Edward Carter.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Ray Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

#### *Procedural History*

The Sumner County Grand Jury indicted Michael Carter and Steven Carter for aggravated assault and aggravated robbery. Although Defendants were indicted separately, the trial court consolidated their cases, and Defendants proceeded to a jury trial.

#### *Trial Testimony*

On January 25, 2016, Jennifer Key received a call from the victim, Coty Brimm, asking her to pick him up at a gas station in Gallatin. She drove from Portland to Gallatin and picked up Mr. Brimm. On the way back to Mr. Brimm's residence in Portland, they stopped at another gas station to get some towels because Mr. Brimm's hand was bleeding from a cut that he received during a fight with his brother earlier in the day. They made a second stop to get Band-Aids.

Once home, Mr. Brimm called Michael Carter in an attempt to sell him a computer. Michael Carter initially declined, but he called back a short time later and told Mr. Brimm, who was a tattoo artist, to bring his tattoo equipment to Michael Carter's residence because he needed "a hundred dollars['] worth of tattoo work." Mr. Brimm told Ms. Key that he would give her some money if she took him to Michael Carter's residence.

Mr. Brimm rode with Ms. Key to Michael Carter's home. After they entered the residence, Ms. Key was talking to Steven Carter when she heard Michael Carter and Mr. Brimm arguing. She saw Michael Carter point a pistol at Mr. Brimm. According to Ms. Key, Steven Carter said, "Don't worry brother[,] I got this" and he tried to diffuse the situation by asking Michael Carter to put the gun down. Ms. Key stated that Michael Carter was holding the pistol in one hand and using a cell phone in the other hand to video Mr. Brimm's begging not to be shot. Michael Carter told Mr. Brimm to take off

his jewelry. Ms. Key helped Mr. Brimm take off his necklace, and she placed it on the barrel of the pistol that Michael Carter was holding. Michael Carter then made Mr. Brimm empty his pockets. In addition to the necklace, Michael Carter took Mr. Brimm's rings, money, wallet, cell phones, and tattoo equipment. Afterwards, Ms. Key and Mr. Brimm were allowed to leave and returned to Mr. Brimm's home.

About two hours later, Ms. Key drove Mr. Brimm to the Portland Emergency Room because he was having significant pain. After they arrived at the emergency room, Ms. Key left to get food. When she returned, Deputy Brian Gambino of the Sumner County Sheriff's Office was taking a statement from Mr. Brimm about the incident that occurred at Michael Carter's residence. Ms. Key also gave Deputy Gambino a statement about the incident.

On cross-examination, Ms. Key testified that when she arrived at Michael Carter's house, she found out that Michael Carter believed Mr. Brimm had stolen his cell phone. Ms. Key did not see Steven Carter strike Mr. Brimm.

At the beginning of the State's direct examination, Mr. Brimm agreed that he was currently in jail for a probation violation. He explained that he "was sent to rehab, and [he] left early without permission." Mr. Brimm pled guilty to escape. Mr. Brimm also pled guilty to theft under five hundred dollars in Davidson County on October 21, 2016. Mr. Brimm claimed that he was addicted to methamphetamine and prescription pills.

Mr. Brimm testified that, on January 25, 2016, he did not have any money, so he called Michael Carter to see if he would buy Mr. Brimm's girlfriend's computer. Michael Carter declined and hung up. Michael Carter called Mr. Brimm back within ten minutes and said that he had some tattoo work that Mr. Brimm could do at Michael Carter's home. Mr. Brimm and Ms. Key took his tattoo equipment to Michael Carter's home.

Mr. Brimm said he walked into Michael Carter's residence, shook Steven Carter's hand, turned to shake Michael Carter's hand, and Steven Carter hit him. Mr. Brimm fell to the floor, and when he tried to stand up, he saw that Michael Carter was pointing a pistol at him. Mr. Brimm said he "balled up," and Steven Carter continued to hit and kick him for about two minutes. After the beating stopped, Ms. Key helped Mr. Brimm get into a chair. Mr. Brimm said Michael Carter had the pistol in one hand and a cell phone in the other and told Mr. Brimm to "tell the world how much of a b***h you are." Mr. Brimm said he told Michael Carter that "[y]ou [will] have to shoot me first." Michael Carter then "loaded and [] cocked the gun," after which Mr. Brimm complied with his demand. Michael Carter recorded a video of the incident on his cell phone and uploaded it to Facebook. The video was played for the jury and admitted into evidence.

- 3 -

Mr. Brimm asked Michael Carter if they could leave. Michael Carter told Mr. Brimm that "he needed everything out of [Mr. Brimm's] pockets and his jewelry." When Mr. Brimm could not get his necklace off, Michael Carter told Ms. Key to help Mr. Brimm. Mr. Brimm stated that Defendants took his necklace, rings, money, wallet, cell phones, and tattoo equipment. Shortly afterwards, Mr. Brimm and Ms. Key were allowed to leave.

Mr. Brimm testified that the reason his eye was a little red in the video on Facebook was because Michael Carter had kicked him. Mr. Brimm identified the necklace that he was wearing in the video as the necklace that Michael Carter took from him. Mr. Brimm testified that the video showed him holding his left side with his hands because "that [wa]s where [he] got kicked." Mr. Brimm testified that, before the beating started Michael Carter accused him of stealing his cell phone.

Mr. Brimm said Ms. Key drove him to the emergency room the next day because he was "throwing up blood." He stated that he had multiple bruises on his left side, a collapsed left lung, and injury to his left eye and left side ribs. At the emergency room, he gave a statement to Deputy Gambino, who was dispatched to the hospital to investigate an assault. When Deputy Gambino asked about the cut on his hand, Mr. Brimm lied and told Deputy Gambino that the cut happened at Michael Carter's home.

Deputy Gambino came to Mr. Brimm's home the next day. Mr. Brimm informed Deputy Gambino about the video Michael Carter uploaded on Facebook. When Deputy Gambino again asked Mr. Brimm about the injury on his hand, Mr. Brimm told Deputy Gambino that the injury might have happened at Michael Carter's residence.

On cross-examination, Mr. Brimm testified that he lied to Deputy Gambino on both occasions concerning the cut on his hand. Mr. Brimm actually sustained the injury earlier in the day on January 25, 2016, during an altercation with his brother.

Ashley Colonello, Mr. Brimm's ex-girlfriend, testified that she was incarcerated at the Davidson County Jail. She said she regularly spoke to Mr. Brimm by phone. In January 2016, she called Mr. Brimm's phone from the jail, but Michael Carter answered. Michael Carter told her, "We warmed [Mr. Brimm] up real good. He was crying like a little girl[.]" Michael Carter told her that she was calling "a phone that wasn't [Mr. Brimm's] phone, and [that] it was his phone and he got it back." Michael Carter also told Ms. Colonello that she did not have to worry about paying off her debt to Michael Carter because he "made [Mr. Brimm] pay for it." Ms. Colonello explained that Michael Carter believed she owed him money because of a bad drug deal. Ms. Colonello also testified that "[Michael Carter] said, 'you know, you should see the video I have got of [Mr. Brimm] now,'" referring to the video uploaded on Facebook. The phone conversation

between Ms. Colonello and Michael Carter was recorded, and the recording was admitted into evidence and played for the jury.

Deputy Gambino testified that he spoke to Mr. Brimm on January 26, 2016, after receiving a call from dispatch advising that there had been an assault and that the victim was at the Portland Emergency Room. Deputy Gambino obtained a written statement, in which Mr. Brimm claimed that when he walked through the door at Michael Carter's home, Steven Carter hit him and knocked him to the ground, and Michael Carter threatened him with a gun. Mr. Brimm said Michael Carter took his necklace, rings, money, wallet, knife, cell phones, and tattoo equipment. Mr. Brimm told Deputy Gambino that he sustained a collapsed lung from the assault. Deputy Gambino took photographs of Mr. Brimm at the emergency room, which the State admitted into evidence.

Deputy Gambino testified that Mr. Brimm originally claimed the cut on his hand must have happened at some point during the altercation at Michael Carter's home. On January 27, 2016, Deputy Gambino learned that the cut occurred earlier on January 25, 2016, in Lebanon. Deputy Gambino later contacted the Lebanon Police Department and received a copy of an incident report concerning Mr. Brimm and his brother.

Deputy Gambino went to Michael Carter's home on January 27, 2016, to speak with Defendants. He noticed that Michael Carter was wearing the necklace that matched the one described by Mr. Brimm. Michael Carter denied Mr. Brimm had been assaulted at his home, claiming that he did not touch Mr. Brimm and the incident "never happened[.]" Michael Carter then said that "even if [it did happen], that it happened inside the house and [Mr. Brimm] was trying to steal from him." When pressed by Deputy Gambino, Michael Carter responded, "Well [Mr. Brimm] was trying to steal and I may have slapped [him] but it was open handed." Deputy Gambino also stated that none of the property taken from Mr. Brimm was found in the possession of Steven Carter.

Based on this proof, the jury convicted Michael Carter of aggravated assault and aggravated robbery and Steven Carter of aggravated assault and facilitation of aggravated robbery.

### *Sentencing Hearing*

At the outset of the sentencing hearing, the trial court merged Michael Carter's aggravated assault conviction into his conviction for aggravated robbery and merged Steven Carter's aggravated assault conviction into his conviction for facilitation of aggravated robbery. A presentence report and certified copies of prior convictions for each Defendant were introduced without objection.

Steven Carter delivered an allocution statement in which he apologized to his family and the court. He explained that he did not intend for anything to be taken from Mr. Brimm and that he tried to prevent the incident from happening. He stated that his brother, Michael Carter, did not intend to take anything from Mr. Brimm. Steven Carter took full responsibility for his actions in the incident and stated that he understood the law and the consequences of his actions.

The trial court stated that it had considered the evidence presented at the trial and the sentencing hearing, the allocution of Steven Carter, the presentence reports, the sentencing principles of Tennessee Code Annotated section 40-35-103, the nature and characteristics of the criminal conduct involved, enhancement and mitigating factors, and the arguments of counsel.

Regarding Michael Carter, the trial court found two applicable enhancement factors: that he had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and that he was a leader in the commission of an offense involving two or more criminal actors. The court noted that the presentence report showed that Michael Carter had four felony convictions, including three separate aggravated assault convictions, and sixteen misdemeanor convictions. In total, the court found Michael Carter had eleven convictions for crimes of violence. The court found no applicable mitigating factors. The court sentenced Michael Carter to twenty years for aggravated robbery to be served in the Tennessee Department of Correction as a Range II, multiple offender. The court found that the sentence was "justly deserved in relation to the seriousness of the offense [and] to promote respect for the law."

Based on the record, it does not appear that the trial court sentenced either Defendant on the aggravated assault conviction, and no judgments of conviction were executed or entered for the merged offenses. The trial court properly noted the mergers in the "Special Conditions" box of the judgments of conviction for aggravated robbery and facilitation of aggravated robbery.

After the trial court denied Defendants' motions for new trial, Defendants timely appealed.

## II. Analysis

### A.    Sufficiency of the Evidence

Michael Carter contends that the evidence presented at trial was insufficient to support his convictions for aggravated assault and aggravated robbery.  He argues that his convictions are inconsistent because the jury found Steven Carter only guilty of facilitation of aggravated robbery.  Michael Carter also argues that because Mr. Brimm's recollection of the day of the incident was "foggy and untrustworthy[,]" this court should overturn his convictions.  The State responds that the evidence was sufficient to support the convictions.  We agree with the State.

Steven Carter contends that the evidence presented at trial was insufficient to support his convictions for aggravated assault and facilitation of aggravated robbery.  More specifically, he argues that because the jury convicted him of facilitation of aggravated robbery, a lesser included offense of aggravated robbery, the State's theory presented at trial regarding the charge of aggravated assault fails too.  Like Michael Carter, Steven Carter contends that his two convictions "required the jury to adopt factual circumstances that [we]re mutually exclusive of one another."  Steven Carter also appears to argue that his convictions should be overturned because the only testimony offered by the State to support a finding of aggravated assault was the testimony of Mr. Brimm, who did not testify that Steven Carter used or displayed a deadly weapon.  The State responds that if there were any inconsistencies in the verdicts, they do not affect the sufficiency of the evidence of his convictions.  We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e).  Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).  This court will not reweigh the evidence.  *Id*.  Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence."  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt.  *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  A defendant bears the burden of proving why the evidence was insufficient to support the conviction.  *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914.  On appeal, the "State must be afforded the strongest legitimate view of the evidence

and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

### i.    Michael Carter

As relevant here, "[a] person commits aggravated assault who[] . . . [i]ntentionally or knowingly commits an assault as defined in § 39-13-101, and the assault[] . . . [i]nvolved the use or display of a deadly weapon[.]"  Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii) (2016).  "A person commits assault who[] . . . [i]ntentionally, knowingly or recklessly causes bodily injury to another[.]"  Tenn. Code Ann. § 39-13-101(a)(1) (2016).

Mr. Brimm testified that his eye was red in the Facebook video because Michael Carter kicked him in the eye.  Mr. Brimm and Ms. Key testified that Michael Carter held a gun on Mr. Brimm.  When viewed in the light most favorable to the State, the evidence was sufficient for any rational trier of fact to find Michael Carter guilty beyond a reasonable doubt of aggravated assault.

As charged here, aggravated robbery is a robbery that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]"  Tenn. Code Ann. § 39-13-402(a)(1) (2016).  "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear."  Tenn. Code Ann. § 39-13-401(a) (2016).

Mr. Brimm and Ms. Key testified that Michael Carter held a gun on Mr. Brimm and threatened to kill Mr. Brimm if he did not comply with Michael Carter's commands.  Mr. Brimm and Ms. Key testified that Michael Carter took Mr. Brimm's necklace, rings, money, wallet, cell phones, and tattoo equipment at gunpoint.  When viewed in the light most favorable to the State, the evidence was sufficient for any rational trier of fact to find that Michael Carter used or displayed a deadly weapon to take property from Mr. Brimm by violence or by putting Mr. Brimm in fear.  This testimony fully supports Michael Carter's conviction for aggravated robbery.

### ii.    Steven Carter

Steven Carter argues that the only testimony offered by the State at trial to support a finding of aggravated assault was the testimony of Mr. Brimm, who did not testify that Steven Carter used or displayed a deadly weapon.  Steven Carter's argument fails to recognize that he can be guilty of aggravated assault either by committing the aggravated

assault himself or, as the trial court instructed the jury, by being criminally responsible for the actions of Michael Carter.

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a) (2016). As pertinent here, "[a] person is criminally responsible for an offense committed by the conduct of another, if[,] . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2) (2016). Criminal responsibility is not a separate crime but instead a theory by which the State may prove the defendant's guilt based upon another person's conduct. *State v. Osborne*, 251 S.W.3d 1, 16 (Tenn. Crim. App. 2007) (citing *State v. Mickens*, 123 S.W.3d 355, 389-90 (Tenn. Crim. App. 2003)).

"[U]nder the theory of criminal responsibility, presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may be inferred." *State v. Phillips*, 76 S.W.3d 1, 9 (Tenn. Crim. App. 2001). In order to be convicted of the crime, the evidence must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission. *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994); *State v. Foster*, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988).

Mr. Brimm testified that, after he walked into Michael Carter's home, Steven Carter hit him as he turned around to shake Michael Carter's hand. Mr. Brimm also testified that Steven Carter continued to hit and kick Mr. Brimm for about two minutes while Michael Carter held a gun on Mr. Brimm. Mr. Brimm sustained a collapsed lung and contusions on the left side of his body from the beating. When viewed in the light most favorable to the State, the evidence was sufficient for any rational trier of fact to find that Steven Carter knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission. Steven Carter was criminally responsible for the aggravated assault committed by Michael Carter's use of a deadly weapon. This testimony supports Steven Carter's conviction for aggravated assault.

We have previously set out the definitions of aggravated robbery and robbery. "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2016).

- 9 -

The jury could also have reasonably inferred that Steven Carter provided substantial assistance to Michael Carter by beating Mr. Brimm while Michael Carter held Mr. Brimm at gunpoint and then robbed Mr. Brimm of his necklace, rings, money, wallet, cell phones, and tattoo equipment. Taken in the light most favorable to the State, the proof presented at trial was sufficient for any rational trier of fact to find Steven Carter guilty beyond a reasonable doubt of facilitation of aggravated robbery.

### iii.     Inconsistent Verdicts

Defendants' arguments concerning inconsistencies in the jury's verdicts are unpersuasive. Inconsistent verdicts may occur in trials of multiple defendants and in trials of multiple charges against a single defendant. Appellate courts "will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if [the court is] satisfied that the evidence establishes guilt of the offense upon which the conviction was returned." *Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 1973). Our supreme court has held that "[c]onsistency in verdicts for multiple count indictments is unnecessary" and that appellate courts will not speculate on the jury's reasoning in reaching its verdict. *Id.* at 93-94; *see also State v. Davis*, 466 S.W.3d 49, 76 (Tenn. 2015).

As stated above, we conclude that any rational trier of fact could have found Defendants guilty of the crimes beyond a reasonable doubt after reviewing the evidence in the light most favorable to the State. Therefore, we will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning. Defendants are not entitled to relief on this basis.

### iv.     Credibility of Witnesses

Defendants contend that there was a "great divide between the actual truth and Mr. Brimm's foggy and untrustworthy recollection, regarding crucial and consequential facts of the case[.]" Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *Bland*, 958 S.W.2d at 659. This court will not reweigh the evidence. *Id.* In the light most favorable to the State, the evidence was sufficient for any rational trier of fact to find the defendant guilty of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see also* Tenn. R. App. P. 13(e). Defendants' challenges to the sufficiency of the evidence on this basis have no merit.

### B.     *Golden Rule Argument*

Defendants contend that the State made an improper "golden rule argument" during both opening and closing statements. The State asserts that Defendants waived

this argument by failing to make a timely objection. We agree with the State and determine Defendants are not entitled to plain error relief.

The State made the following comments during its opening statement:

> Coty Brimm is the victim. Coty Brimm is going to sit right over here in this witness chair and he is going to testify. Coty Brimm is going to come from that door right there, because he is in jail. He is going to be wearing his prison outfit and he is shackled and I submit to you, ladies and gentlemen, that the same laws that apply to you apply to him.

> Coty Brimm is a methamphetamine addict and he will tell you that and I submit to you, ladies and gentlemen, the State of Tennessee is here to prosecute this case with the same vigor, with the same full force that we can muster as if it would have been one of you. Thank you.

During its closing argument, the State made the following comments:

> As I told you[,] the Judge said that the laws apply across or the Criminal Justice system applies across the entire United States. I told you in my opening statement that I will prosecute this case with the same vigor, with the same full force that I would had any one of you been placed in this position.

> . . . .

> Ladies and gentlemen the State beseeches you to come forward to look at other persons of mankind just as you would yourself. I am not asking you to be sympathetic. I am just asking you to apply the law. Thank you.

Because Defendants failed to make a contemporaneous objection, they waived plenary review of this issue. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.") Despite waiver, "when necessary to do substantial justice," this court may "consider an error that has affected the substantial rights of a party" under plain error analysis. Tenn. R. App. P. 36(b); *see also State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010). Plain error is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994).

In *Adkisson*, this court listed five factors to be applied to determine when alleged trial error constitutes "plain error": (1) "the record must clearly establish what occurred at trial"; (2) "a clear and unequivocal rule of law must have been breached"; (3) "a substantial right of the accused must have been adversely affected"; (4) "the accused did not waive the issue for tactical reasons"; and (5) "consideration of the error is 'necessary to do substantial justice.'" *Adkisson*, 899 S.W.2d at 641-42 (internal citations omitted); *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopted *Adkisson* analysis). In order to be entitled to plain error relief, all five factors must be established, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Smith*, 24 S.W.3d at 283. Further, "the plain error must [have been] of such a great magnitude that it probably changed the outcome of the trial." *Id*. (quoting *Adkisson*, 899 S.W.2d at 642). The defendants bear the burden of persuading the appellate court that the trial court committed plain error. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

In Tennessee, it is well-established that argument of counsel is a valuable privilege that should not be unduly restricted. *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978). Therefore, "our courts give wide latitude to counsel in arguing their position in a case to the jury, and the action of a trial judge in controlling arguments of counsel will not be reversed absent an abuse of discretion." *Id*. (citing *Smith v. State*, 527 S.W.2d 737 (Tenn. 1975)). The purpose of closing argument is to allow each side "to assist the jury in analyzing, evaluating, and applying the evidence" and "includes counsel's right to state his contention as to the conclusion that the jury should draw from the evidence." *State v. Cleveland*, 959 S.W.2d 548, 551 (Tenn. 1997) (quoting *United States v. Garza*, 608 F.2d 659 (5th Cir. 1979)). Closing arguments "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." *Russell v. State*, 532 S.W.2d 268, 271 (Tenn. 1976).

This court has defined the "golden rule argument" as asking the jury to "place themselves in the position of a party to the cause, or posing to them the question whether they would go through life in the condition of the injured [victim], or would want members of their family to go through life [physically disabled][.]" *State v. Randy Anthony Sanders*, No. M2014-02535-CCA-R3-CD, 2015 WL 5461660, at *6 (Tenn. Crim. App. Sept. 18, 2015) (second alteration in original) (internal citation omitted), *perm. app. denied* (Tenn. Jan. 19, 2016).

The State never asked the jurors to put themselves in the victim's position. The State never insinuated that jurors should place themselves in the position of a victim of an aggravated robbery or aggravated assault. Instead, the State argued that the law protects all victims equally, even victims who are methamphetamine addicts and who are

incarcerated. Defendants have failed to show that a substantial right was "adversely affected" or that consideration of any error is "necessary to do substantial justice." *Adkisson,* 899 S.W.2d at 641-42. Defendants are not entitled to plain error relief on this basis.

### *C.*     *Tennessee Rules of Evidence 608 and 609*

Defendants contend that the trial court erred in applying Tennessee Rules of Evidence 608 and 609 "to exclude testimony and/or evidence pertaining to [all] reasons why the victim, [Mr.] Brimm, was in jail at the time of trial, specifically in excluding testimony pertaining to Mr. Brimm's pending criminal charge." The State responds that "[t]his claim is meritless because . . . Defendants failed to make an appropriate offer of proof, what record there is suggests that the State did not 'open the door,' and any error was harmless." We agree with the State that Defendants are not entitled to relief on this issue.

Generally, "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this [c]ourt will not interfere in the absence of abuse appearing on the face of the record." *State v. Plyant,* 263 S.W.3d 854, 870 (Tenn. 2008). A trial court abuses its discretion when it "applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *Id*. (quoting *State v. Ruiz,* 204 S.W.3d 772, 778 (Tenn. 2006)).

### i.     **Tennessee Rule of Evidence 609**

The State called Mr. Brimm in their case in chief. After asking Mr. Brimm his name, the State asked, "Mr. Brimm, now, obviously, you are in the Sumner County jail; is that right?" When Mr. Brimm answered in the affirmative, the State inquired as to the reasons he was in jail. Mr. Brimm stated that he "violated [his] probation" and "was sent to rehab and [he] left [rehab] early without permission." As a result, he said he was charged with and pled guilty to escape. Mr. Brimm also admitted that he had been previously convicted of misdemeanor theft and that he was addicted to methamphetamine and prescription drugs.

When the State turned its questioning to Defendants' case, counsel for Defendants requested a hearing outside the presence of the jury. Once the jury was excused, Steven Carter's counsel asserted that Mr. Brimm was also incarcerated in Sumner County because he was being held "with a no-bond warrant for fugitive from justice from Simpson County, Kentucky for Wanton Endangerment First Degree, Fleeing or Evading Police[,] First Degree[] Attempted Murders of a police officer; and, Speeding." Counsel argued that "if the State is going to paint a picture of why [Mr. Brimm] is being held [in

- 13 -

jail,] . . . it should be a complete picture." Although Defendants did not reference any rule of evidence to support its request, the trial court ruled that "[t]hese particular matters are charges right now and they're not admissible under 609." Defendants made no additional argument and did not request to make an offer of proof.

Rule 609 permits a party to attack the credibility of a witness by presenting evidence of prior convictions if four conditions are satisfied. *State v. Waller*, 118 S.W.3d 368 (Tenn. 2003). Defendants sought to question the witness about pending charges, not convictions. The trial court properly ruled that Rule 609 did not permit such cross-examination.

### ii. Tennessee Rule of Evidence 608

At the motion for new trial hearing, after the trial court stated Rule 609 only allowed a witness's testimony to be attacked by prior convictions, Steven Carter's counsel argued, "I think it's not under 609. I think it's under 608(b) where when the door is open and there's the – you're able to comment and discuss things that wouldn't normally be admissible." This was first mention of Rule 608(b) by Defendants. Now, on appeal, Defendants challenge the trial court's ruling on the admission of Mr. Brimm's alleged prior bad acts based on the "opening the door" doctrine and Tennessee Rule of Evidence 608.

We determine that Defendants have waived the claim that the trial court erred in applying Tennessee Rule of Evidence 608 to exclude certain evidence for three reasons. First, Defendants' brief makes only a cursory mention of Rule 608 in a subheading and in one conclusory sentence. When a defendant fails "to articulate reasons to support his conclusory statement," the issue is waived. *State v. Gray*, 960 S.W.2d 598, 605 (Tenn. Crim. App. 1997). Second, Defendants failed to cite any authority to support their claim that the "door" was opened under Rule 608 by the State's direct examination of the victim. Tennessee Rule of Appellate Procedure 27(a)(7)(A) and Tennessee Court of Criminal Appeals Rule 10(b) require a party to cite in their brief to the authority that they rely on for their arguments. Because Defendants failed to cite any authority in support of their Rule 608 claim, the issue is waived. *See State v. Dickerson*, 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993). Third, in their motions for new trial, Defendants asserted that the trial court erred in applying Tennessee Rule of Evidence 609 without mentioning Rule 608. Defendants "cannot assert a new or different theory" to support a claim that the trial court erred in excluding evidence "in a motion for new trial or in the appellate court." *See Adkisson*, 899 S.W.2d at 634-35.

Defendants have waived appellate review of the claim that the trial court erred in excluding evidence under Rule 608.

- 14 -

### D. Sentencing

Michael Carter additionally asserts that the trial court erred in its determination that he was a Range II, multiple offender. Further, he contends that the trial court erred as a matter of law in determining the applicability of enhancement and mitigating factors, resulting in an excessive sentence. The State responds that the trial court properly sentenced Michael Carter. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts. "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." *Bise*, 380 S.W.3d at 709. Moreover, under those circumstances, this court may not disturb the sentence even if it had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and 114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the results of any validated risk and needs assessment contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b) (2017); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2017).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code

Ann. § 40-35-210(e) (2017); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705–06. Even "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing." *State v. Christopher Scott Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013) (citing *Bise*, 380 S.W.3d at 706; *Carter*, 254 S.W.3d at 345-46), *no perm. app. filed*.

In this case, Michael Carter was convicted of aggravated assault, a Class C felony, and aggravated robbery, a Class B felony. *See* Tenn. Code Ann. §§ 39-13-102(e)(1)(A)(ii), -402(b) (2016). The trial court determined that Michael Carter was a multiple offender based upon his prior criminal record. As relevant here, "[a] multiple offender is a defendant who has received[] . . . [a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable[.]" Tenn. Code Ann. § 40-35-106(a)(1) (2017). "A defendant who is found by the court beyond a reasonable doubt to be a multiple offender shall receive a sentence within Range II." Tenn. Code Ann. § 40-35-106(c) (2017). A Range II sentence for a Class B felony is "not less than twelve (12) nor more than twenty (20) years[.]" Tenn. Code Ann. § 40-35-112(b)(2) (2017).

Michael Carter asserts that the trial court erred in determining that he was a Range II, multiple offender, at the time of sentencing. Although Michael Carter only included a conclusory statement regarding this issue in his brief, we opt to consider the issue on the merits. The State introduced certified copies of the judgments showing that Michael Carter had three prior convictions for aggravated assault occurring on May 14, 2003; May 15, 2003; and May 1, 2005. These three prior convictions for aggravated assault were all Class C felonies. Michael Carter's aggravated robbery conviction is a Class B felony; therefore, his prior convictions for aggravated assault amount to three felony convictions within the next two lower felony classes of the aggravated robbery conviction. Thus, we conclude that the trial court did not err in classifying Michael Carter as a Range II, multiple offender.

In setting the length of the sentence within the range, the trial court found that two enhancement factors applied and that no mitigating factors applied. Regarding the enhancement factors, the trial court found that Michael Carter had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, and that Michael Carter was a leader in the commission of an offense involving two or more criminal actors. *See* Tenn. Code Ann. § 40-35-114(1), (2) (2017). On appeal, Michael Carter does not dispute the trial court's reliance on these factors. The

record shows that Michael Carter was previously convicted of sixteen misdemeanors, four felonies; eleven of these prior convictions were crimes of violence, including domestic assault, assault, and aggravated assault. The trial court determined that a top-of-range sentence was justly deserved in relation to the seriousness of the offense and that the sentence would promote respect for the law. The trial court did not abuse its discretion either in finding the criminal history or the leader in the commission of an offense enhancement factor applied.

Michael Carter argues that the trial court erred in imposing his sentence because the sentence was not a fair result of the court's assessment of applicable mitigating factors. More specifically, he argues that the trial court failed to acknowledge his educational "achievements and aspirations[,]" which were reflected in his presentence report; that the victim lied to officers about the cause of the injury to his hand, which severely undermines the victim's credibility; that the victim stole Michael Carter's cell phone; that the trial court failed to consider his history of drug abuse and familial mistreatment; and that the trial court should have considered the credibility of the witnesses under the "catch-all" provision of Tennessee Code Annotated section 40-35-113(13), which provides for application of "[a]ny other factor consistent with the purposes of this chapter." Tenn. Code Ann. § 40-35-113(13) (2017). The State responds that Michael Carter has failed to show that the trial court erred in failing to find any mitigating factors and that the misapplication of mitigating factors would not be grounds for appellate relief because the trial court did not "wholly depart" from the principles and purposes of sentencing. We agree with the State.

Tennessee Code Annotated section 40-35-113 states, in pertinent part, that, "[i]f appropriate for the offense, mitigating factors may include, but are not limited to:" "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury"; "[t]he defendant acted under strong provocation"; "[t]he defendant played a minor role in the commission of the offense; "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor"; and "[t]he defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime[.]" Tenn. Code Ann. § 40-35-113(1), (2), (4), (8), (12) (2017).

Mitigating factors are advisory only, and the weight given to those factors is entirely within the trial court's discretion. Tenn. Code Ann. § 40-35-210(c)(2) (2017); *Bise*, 380 S.W.3d at 701; *Carter*, 254 S.W.3d at 345. While the trial court did not detail on the record specific reasons for rejecting these mitigating factors, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705–06. The trial court did

not abuse its discretion when it rejected these mitigating factors and sentenced Michael Carter to a within-range sentence of twenty years to serve for aggravated robbery. We conclude that Michael Carter is not entitled to relief on this ground.

### *E. Merger*

At the sentencing hearing, the trial court merged Michael Carter's aggravated assault conviction into his aggravated robbery conviction and Steven Carter's aggravated assault conviction into his facilitation of aggravated robbery conviction. The trial court entered a judgment of conviction showing that Michael Carter was convicted of aggravated robbery in Count 2 and sentenced to twenty-years as a multiple offender and a judgment of conviction showing that Steven Carter was convicted of facilitation of aggravated robbery in Count 2 and sentenced to nine years as a multiple offender. In the "Special Conditions" box of the judgment for Michael Carter, the trial court noted that the aggravated assault conviction in count 1 merged with the aggravated robbery conviction in count 2. In the "Special Conditions" box of the judgment for Steven Carter, the trial court noted that the aggravated assault conviction in count 1 merged with the facilitation aggravated robbery conviction in count 2. No judgment of conviction for aggravated assault was entered for either Defendant. A judgment of conviction should have been completed for the aggravated assault convictions. *See State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015). ("When a jury returns a guilty verdict, the trial court executes a document referred to as a 'judgment of conviction' that must be entered by the clerk."). The judgment of conviction should show the sentence imposed by the trial court as required by Tennessee Rule of Criminal Procedure 32(e)(2). *Id.*, *see State v. Sangria Venturia Baker, Jr.*, No. W2018-00732-CCA-R3-CD, 2019 WL 2404977, at *8 (Tenn. Crim. App. June 7, 2019) (remanding for entry of an amended judgment reflecting the imposition of a sentence in a merged count).

### III. Conclusion

For the aforementioned reasons, we affirm Michael Carter's convictions for aggravated robbery and aggravated assault and Steven Carter's convictions for facilitation of aggravated robbery and aggravated assault. We remand for sentencing on the aggravated assault convictions and for entry of uniform judgment documents in conformity with *Berry*, 503 S.W. 3d at 364.

_____
ROBERT L. HOLLOWAY, JR., JUDGE